The ESTATE OF Ken MONTAG, By and Through its Legal Representative, Sandra MONTAG a/k/a Sandra Grant, Appellant,

v.

T H AGRICULTURE & NUTRITION COMPANY, INC. f/k/a Thompson–Hayward Chemical Company, A Corporation; Monsanto Company, A Corporation; Wright County Rural Electric Cooperative, A Cooperative; and Monona County Rural Electric Cooperative, A Cooperative, Appellees.

No. 92–1971.

Supreme Court of Iowa.

Dec. 22, 1993.

Marc A. Humphrey and James R. McCreight of Humphrey and Haas, P.C., Des Moines, and Duane C. Miller of Miller and Rolfe, Sacramento, CA, for appellant.

Donald H. Carlson of Riordan, Crivello, Carlson, Mentkowski & Steeves, S.C., Milwaukee, WI, and Guy R. Cook of Grefe & Sidney, Des Moines, for appellee T H Agriculture & Nutrition Co., Inc.

E. Ralph Walker, Charles J. Kalinoski, Margaret M. Chaplinsky, and David J. Darrell of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellee Monsanto Co.

John E. Orrell, Jr. of Hopkins & Huebner, P.C., Des Moines, for appellee Wright County Rural Elec. Co-op.

Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., Des Moines, for appellee Monona County Rural Elec. Co-op.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL and TERNUS, JJ.

LARSON, Justice.

Kenneth Montag contracted liposarcoma, or soft tissue cancer, allegedly caused by his exposure to a toxic chemical during his employment in the early 1960s. In 1991 Montag filed suit against the parties he claimed were responsible for his exposure. He died later in 1991, and his estate was substituted as plaintiff. The defendants moved for summary judgment on the ground that the suit was time-barred by the two-year limitation of Iowa Code section 614.1(2) (1991). The district court granted this motion. We affirm.

In 1962, 1963, and 1964, Montag was employed by a company engaged in eliminating brush along county roadways by using phenoxy herbicides 2, 4–D and 2, 4, 5–T (commonly known as Agent Orange). In 1979, Montag was diagnosed with liposarcoma and began treatment. In 1986, he was examined by Dr. Ram Lalchandani, an oncologist. According to Dr. Lalchandani's affidavit, Montag was aware in 1986 that there were health concerns about Agent Orange, and he asked the doctor if there might be a connection between it and his cancer. The doctor said he was not aware of any association but that "it could be looked into further."

■ If a plaintiff is unaware of his injury within the time provided by a statute of limitations, the plaintiff may extend the time for suit under our delayed discovery rule. Under that rule, the statute does not begin to run until the plaintiff knew, or in the exercise of reasonable care should have known, that he had a cause of action. *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985).

■ While a statutory time bar is an affirmative defense that must be established by the defendant, a plaintiff claiming the application of the delayed discovery rule has the burden of proving it. *Sparks v. Metalcraft, Inc.*, 408 N.W.2d 347, 350 (Iowa 1987).

■ Under our cases, the statute of limitations begins to run when a plaintiff first becomes aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause. In that case, "[t]he period of limitations is the outer time limit for making the investigation and bringing the action. The period begins at the time the person is on inquiry notice[.]" *Franzen*, 377 N.W.2d at 662.

In a toxic tort case, such as this, the date of onset, as well as the cause, of a plaintiff's injury is more difficult to ascertain than in the traumatic injury that has provided the basis for some of our discovery rule cases. *Sparks*, however, was similar to this case because it also was a toxic tort case.

In *Sparks*, the plaintiff was employed from October 1964 until August 1980 by an em-

ployer using certain solvents manufactured by Metalcraft, Inc. In 1973, Sparks began complaining of fever, chilling, and severe headaches that he thought might be caused by the solvents. He visited a doctor and took a can of the solvent with him. In 1977, Sparks again consulted a doctor and again took along a container of the solvent.

In September 1980, Sparks consulted a Dr. Carnow, who wrote a lengthy report setting forth his opinion as to the cause of Sparks' problems. In his report, the doctor informed Sparks that the symptoms appeared to be related to Sparks' sixteen-year exposure to the solvent.

Sparks filed his lawsuit in January 1985. Metalcraft moved for summary judgment on the ground that the suit was barred by the two-year statute of limitations in Iowa Code section 614.1(2).

Sparks resisted with an affidavit from Mrs. Sparks in which she stated that, while she and her husband suspected the solvents were causing his complaints, they did not obtain a definitive diagnosis until 1984. The district court in *Sparks* found as a matter of law that the actions were barred by the statute of limitations, and we affirmed. *Sparks*, 408 N.W.2d at 352–53.

In *Sparks* as well as in *Franzen*, we relied on the New Jersey case of *Burd v. New Jersey Telephone Co.*, 76 N.J. 284, 291–92, 386 A.2d 1310, 1314 (1978). In *Burd*, a laborer sustained a heart attack while working in a trench gluing plastic pipe. He had experienced dizziness, lightheadedness, and personality changes before the heart attack, but these symptoms cleared up within an hour or so after he left work. A caution label on the glue advised the user to "avoid inhaling fumes."

While this information was available to Burd in 1971, he did not file suit against the manufacturer of the glue until May 16, 1974, which was beyond the two-year statute of limitations in New Jersey. Burd contended that the statute of limitations did not begin to run until October 1972, when his attorney received a medical report indicating a reasonable likelihood of a link between the glue and the heart attack.

The New Jersey court held as a matter of law that Burd's action was barred. The court noted:

There is no suggestion in any of the leading cases in this area that accrual of the cause of action is postponed until plaintiff learns or should learn the state of the law positing a right of recovery upon the facts already known to or reasonably knowable by the plaintiff.

*Id.* at 291–92, 386 A.2d at 1314.

In the present case, Montag had enough information, more than two years preceding the filing of his lawsuit, to put him on notice that he should investigate. In fact, at least by 1986, he had already begun his investigation. We agree that no issue of material fact exists regarding Montag's inquiry notice in 1986.

We summarily reject, on preservation grounds as well as on its merits, the plaintiff's argument that Montag's death created a new cause of action and a new two-year period of limitations.

**AFFIRMED.**