**Joseph W. RANNEY III, Appellant,**

v.

**PARAWAX COMPANY, INC., Defendant,**

and

**American States Insurance Company f/d/b/a Western Insurance, Appellee.**

No. 96–2004.

Supreme Court of Iowa.

July 29, 1998.

Rehearing Denied Oct. 5, 1998.

John W. Kocourek of Kocourek & Conroy, P.C., Council Bluffs, for appellant.

James E. Thorn of Stuart, Tinley, Peters, Thorn & Hughes, Council Bluffs, for appellee.

TERNUS, Justice.

This case involves the application of the discovery rule and the principle of inquiry notice to a latent injury case arising under Iowa's workers' compensation law. *See* Iowa Code ch. 85 (1993). The district court affirmed the industrial commissioner's summary judgment ruling that the appellant's claim was barred by the two-year statute of limitations for workers' compensation claims. *See id.* § 85.26(1). We affirm.

## I. *Scope of Review.*

Judicial review of the industrial commissioner's decisions is governed by the administrative procedure act, Iowa Code chapter 17A. *See id.* § 86.26. The court may reverse if the commissioner's decision is affected by an error of law. *See id.* § 17A.19(8)(*e*). Here, the appellant claims the commissioner erred in his application of the law governing summary judgments.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Iowa R. Civ. P. 237(c). In reviewing the record before the commissioner to determine if he correctly applied this rule, we consider the evidence in the light most favorable to the party opposing the motion for summary judgment. *See DeLaMater v. Marion Civ. Serv. Comm'n,* 554 N.W.2d 875, 877 (Iowa 1996).

## II. *Background Facts and Proceedings.*

The record shows the following facts, when viewed in a light most favorable to the appellant, Joseph W. Ranney III. Ranney worked for the defendant, Parawax Company, Inc., from 1975 through February 1981. During that time he was exposed to toxic materials in the course of his regular duties. In 1985, Ranney became ill and was diagnosed with Hodgkin's disease.

Ranney suspected from the beginning that his condition might be causally connected to his work with toxic chemicals. The physician he first consulted regarding his symptoms

made the following statements in a report dated June 26, 1985: "The patient does report working with paint solvents and he associates this work in some manner with these recent episodes.... The relationship to the paint solvents is unclear and may suggest an allergic component; however, the unilateral adenopathy and episodic symptoms argue against this." Ranney testified he questioned subsequent treating physicians about a possible connection between his work with chemicals and his disease but none of "the doctors would commit themselves, one way or the other."

Then in 1987, Ranney's wife started law school. Later that year or in 1988, she took a course in which she read cases discussing occupational diseases caused by exposure to chemicals. Ranney and his wife discussed the possibility that his exposure to toxic materials at Parawax caused his condition. Ranney testified he associated his condition to his chemical exposure at that time. It was not until 1991, however, when Ranney asked a new treating physician whether there was a causal link between his work-related exposure and his Hodgkin's disease, that a doctor confirmed Ranney's theory of causation.

This workers' compensation case was filed in 1992 against Ranney's former employer and its workers' compensation carrier, appellee American States Insurance Company. Ranney claimed his Hodgkin's disease was causally connected to his work-related exposure to toxic chemicals. He relied on the discovery rule to extend the two-year statute of limitations applicable to chapter 85 workers' compensation claims.[1]

The industrial commissioner granted a motion for summary judgment filed by American States, ruling that the limitations period had expired before Ranney filed his petition for benefits. The commissioner's ruling was affirmed on judicial review by the district court and this appeal followed.

Ranney argues on appeal that the principle of inquiry notice does not apply in latent injury cases. Alternatively, he argues that inquiry notice was not triggered here until he knew facts showing the probable compensable character of his disease. He claims he did not have such facts until 1991 when he obtained an expert medical opinion linking his disease to his chemical exposure.

### III. *Discussion.*

The resolution of this case requires the application of three related principles of law: the statute of limitations, the discovery rule and inquiry notice. Parawax has the burden to prove its limitations defense; Ranney has the burden to establish any exception to the ordinary limitations period, such as the applicability of the discovery rule. *See Estate of Montag v. T H Agric. & Nutrition Co.*, 509 N.W.2d 469, 470 (Iowa 1993); *Sparks v. Metalcraft, Inc.*, 408 N.W.2d 347, 350 (Iowa 1987).

A. *The statute of limitations and the discovery rule.* A petition for benefits under chapter 85 must be filed "within two years from the date of the occurrence of the injury for which benefits are claimed." Iowa Code § 85.26(1). We have interpreted this statute to mean that the injury occurs when it is discovered. *See Dillinger v. City of Sioux City*, 368 N.W.2d 176, 181 (Iowa 1985). Thus, the two-year limitation period begins to run when "the employee discover[s] or in the exercise of reasonable diligence should ... discover[ ] the nature, seriousness and probable compensable character" of his injury or disease. *Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 261 (Iowa 1980).

As applied here, these principles require that Ranney have actual or imputed knowledge of the nature, seriousness and probable

---

1. Ranney's petition for benefits was originally filed under Iowa Code chapter 85A, Iowa's occupational disease law. The petition was later amended to add a claim under chapter 85. The industrial commissioner ruled that Ranney's chapter 85A claim was barred by § 85A.12, which requires that disablement or death from an occupational disease occur "within one year ... after the last injurious exposure" in order for the employer to be liable. The commissioner held the undisputed facts established that Ranney's last exposure to toxic materials at Parawax occurred more than one year prior to his disablement from Hodgkin's disease. Ranney does not challenge this ruling on appeal. In addition, the parties do not raise any issue as to whether Hodgkin's disease qualifies as an occupational disease under chapter 85A.

compensable character of his disease in order to commence the limitations period. *Cf. Franzen v. Deere & Co.,* 377 N.W.2d 660, 662 (Iowa 1985) (applying discovery rule to tort claim and stating injured person must have "actual or imputed knowledge of all the elements of the action"). There is no dispute that Ranney had actual knowledge of the nature and seriousness of his condition more than two years prior to filing his petition for benefits. The controversy here is whether he had imputed knowledge of the probable compensable nature of his disease, i.e., that his disease was caused by his workplace exposure to toxic chemicals. That brings us to the issue of inquiry notice.

■ B. *Inquiry notice.* Knowledge is imputed to a claimant when he gains information sufficient to alert a reasonable person of the need to investigate. *See Estate of Montag,* 509 N.W.2d at 470; *Franzen,* 377 N.W.2d at 662. As of that date he is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation. *See Franzen,* 377 N.W.2d at 662. We reject Ranney's assertion that inquiry notice does not apply here because he suffered from a latent injury. When Ranney was diagnosed with Hodgkin's disease in 1985, his condition was no longer latent; it was then known. At that point, Ranney was subject to the same duty to investigate as is any other plaintiff who knows he has sustained an injury. Thus, we now turn to an analysis of the inquiry notice rule as applied to the undisputed facts of this case.

■ The record shows that Ranney suspected from the beginning that his Hodgkin's disease was caused by his work-related exposure to toxic materials. By 1987 or 1988, he learned that chemical exposure can cause disease and that persons suffering from such diseases had successfully sued for damages. He concedes he knew of the *possible* compensable nature of his condition at that time. Ranney claims, however, he was not on inquiry notice until he had facts alerting him to the *probable* compensable nature of his condition. We think that once a claimant knows or should know that his condition is possibly compensable, he has the duty to investigate. *See Roth v. G.D. Searle Co.,* 27 F.3d 1303,

1307 (8th Cir.1994) (holding that inquiry notice began when the plaintiff "knew or should have known of her injuries and their *possible* connection to her IUD") (emphasis added) (applying Iowa law); *Jones v. Maine Cent. R.R.,* 690 F.Supp. 73, 75–77 (D.Me.1988) (holding, as a matter of law, that statute of limitations commenced when plaintiffs were diagnosed with hearing loss and "thought," "suspected," or "presumed" it resulted from workplace noise). The purpose of the investigation is to ascertain whether the known condition is probably, as opposed to merely possibly, compensable.

■ Similarly, Ranney also argues that he was not on inquiry notice until 1991 when a physician informed him that his disease was causally connected to his work with toxic chemicals. He relies on the federal district court's decision in *Brazzell v. United States,* 633 F.Supp. 62 (N.D.Iowa 1985). In *Brazzell,* the court held the statute of limitations under the Federal Tort Claims Act did not begin to run until the plaintiff's doctor made a medical determination of causation. 633 F.Supp. at 69. This court, however, has never so interpreted Iowa's statute of limitations. *See Roth,* 27 F.3d at 1308 ("[U]nder Iowa law, actual knowledge of a causal relationship is not required to begin the running of the statute of limitations."). We have held that "positive medical information is unnecessary if [the claimant] has information *from any source* which puts him *on notice* of [the injury's] probable compensable nature." *Robinson v. Department of Transp.,* 296 N.W.2d 809, 812 (Iowa 1980) (emphasis added); *accord* 7 Arthur Larson, *Larson's Workers' Compensation Law* § 78.41(f), at 15–286 (1998). Thus, the duty to investigate does not depend "on exact knowledge of the nature of the problem that caused the injury." *Franzen,* 377 N.W.2d at 662. "[O]nce a person is aware of a problem, he has a duty to investigate." *Sparks,* 408 N.W.2d at 352; *accord Franzen,* 377 N.W.2d at 662 ("It is sufficient that the person be aware that a problem existed."). The purpose of the investigation is to ascertain the exact nature of the problem that caused the injury. *See Franzen,* 377 N.W.2d at 662. Consequently, the lack of an expert opinion supporting cau-

sation does not prevent commencement of the statute of limitations under the principle of inquiry notice. *Cf. Vachon v. State*, 514 N.W.2d 442 (Iowa 1994) (affirming summary judgment for the defendant on statute-of-limitations grounds, despite the plaintiff's claim that statute did not begin until he received a doctor's report that alerted him to the defendant's possible negligence).

If we adopted Ranney's interpretation of when inquiry notice is triggered, the beginning of the limitations period would be postponed until the *successful completion* of the plaintiff's investigation. Such an application of the discovery rule would be contrary to our holdings in *Estate of Montag* and *Franzen*. As we stated in *Franzen*, "[t]he period of limitations is the outer time limit for making the investigation and bringing the action. The period *begins* at the time the person is on inquiry notice." *Franzen*, 377 N.W.2d at 662 (emphasis added); *accord Estate of Montag*, 509 N.W.2d at 470.

We agree with the industrial commissioner that by 1987 or 1988, at the latest, Ranney had enough information to trigger his duty to investigate. *See Nasim v. Warden*, 64 F.3d 951, 956 (4th Cir.1995) (affirming summary dismissal of complaint on statute-of-limitations grounds because the plaintiff was on inquiry notice that his condition was caused by asbestos exposure when (1) he knew that he was exposed to asbestos, that asbestos presented a health hazard and that he suffered physical and psychological injuries, and (2) he believed that his injury and exposure were linked). As of that date, Ranney was on notice of what a reasonably diligent investigation would have disclosed.

Ranney argues, however, that he conducted a reasonably diligent investigation into the cause of his condition, but was unable to obtain confirmation that his work-related exposure caused his Hodgkin's disease. The undisputed facts establish that Ranney's "investigation" consisted of asking his treating physicians whether there was a causal connection between his chemical exposure and his disease. The undisputed facts also show that his physicians would not commit one way or the other or they told him the cause of Hodgkin's disease was unknown. We hold

these facts are insufficient to create a factual issue on the applicability of the discovery rule.

The fact that Ranney's actual investigation was unsuccessful in confirming his suspicions does not toll the statute of limitations. In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the plaintiff knew of his injury and its probable cause in 1969, but did not know of the defendant's negligence, an additional factual element of his claim, until 1971 when a physician told him the defendant's treatment was improper. 444 U.S. at 114, 100 S.Ct. at 355, 62 L.Ed.2d at 265. The plaintiff then filed suit. *Id.* at 115, 100 S.Ct. at 356, 62 L.Ed.2d at 265. In affirming judgment for the defendant on statute-of-limitations grounds, the United States Supreme Court stated:

> [The plaintiff] may be incompetently advised or the medical community may be divided on the crucial issue of negligence, as the experts proved to be on the trial of this case. But however [the plaintiff] is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*Id.* at 124, 100 S.Ct. at 360, 62 L.Ed.2d at 270.

We think the same reasoning applies here to Ranney's investigation of the probable cause of his Hodgkin's disease. *See Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995) (affirming summary judgment for the defendant despite the plaintiff's claim that he had not discovered the cause of his lung cancer until two years before he filed suit: "It is well settled that the statute of limitations is not tolled by mistake or misunderstanding. Also, a diligent investigation may

require one to seek further medical examination as well as competent legal representation.") (citations omitted). By 1988 at the latest, Ranney knew of the possible connection between his disease and his employment; he had two years from that date to complete his investigation and file suit. His inability to find expert support for his theory. of causation within that time does not prevent the limitations period from running.[2]

We conclude the commissioner did not err in ruling as a matter of law that Ranney's workers' compensation claim was barred by the statute of limitations. Although this conclusion has the effect of barring a possibly meritorious claim, that is the unfortunate result of any statute of limitations. There must come a time when the interest in preventing stale claims takes precedence over the policy of deciding cases on their merits. That time has arrived in this case.

**AFFIRMED.**

All justices concur except ANDREASEN, LARSON, LAVORATO, and SNELL, JJ., who dissent in part.

ANDREASEN, Justice (dissenting in part).

I respectfully dissent in part from the majority opinion.

Under Iowa Code section 85.26 (1993), a petition for workers' compensation benefits must be filed within two years from the date of the occurrence of the injury for which benefits are claimed. In *Orr v. Lewis Central School District*, 298 N.W.2d 256, 261 (Iowa 1980), we held the discovery rule, first adopted by the court in *Chrischilles v. Griswold*, 260 Iowa 453, 463, 150 N.W.2d 94, 100

(1967), applied to such workers' compensation claims. In arriving at this decision we recognized that courts do not favor statutes of limitations and that we must apply the workers' compensation statute broadly and liberally in furtherance of its humanitarian objective. *Orr*, 298 N.W.2d at 261. Under the discovery rule, the limitation period began to run "when the employee discovered or in the exercise of reasonable diligence should have discovered the nature, seriousness and *probable compensable character*" of the injury causing the disability for which benefits were claimed. *Id.* (emphasis added).

I agree with the majority statement that "[t]he controversy here is whether he [Ranney] had imputed knowledge of the probable compensable nature of his disease." I also agree Ranney was on inquiry notice when he first became "aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its causes." *Estate of Montag v. T H Agric. & Nutrition Co.*, 509 N.W.2d 469, 470 (Iowa 1993).

It is clear from the record that, when diagnosed with Hodgkin's disease in 1985, Ranney made inquiry as to whether the disease was caused by his work place exposure to toxic chemicals. He attempted to establish a causal link between his disease and the chemicals to which he was exposed. He was told by his physician that the medical establishment did not know what caused Hodgkin's disease. He continued to investigate and inquire as to the cause of his disease. He made numerous inquiries as to the cause of the disease of different physicians who were examining and treating him between 1985 and 1992. It is undisputed that Ranney first became aware of the probable causal

---

2. Ranney's reliance on *Bressler v. Graco Children's Prods., Inc.*, 43 F.3d 379 (8th Cir.1994), and *Baines v. Blenderman*, 223 N.W.2d 199 (Iowa 1974), is misplaced. In *Bressler*, the plaintiffs were told their child died of SIDS, rather than by suffocation. 43 F.3d at 380. The Eighth Circuit Court of Appeals held there was a factual issue precluding summary judgment as to whether the plaintiffs "conducted a reasonably diligent investigation." *Id.* at 381. Even if we assume such a factual issue would preclude summary judgment under Iowa law, the underlying facts here are different from those in *Bressler*. Here, Ranney was not misled by his physicians into

believing that his exposure to chemicals did *not* cause his Hodgkin's disease. Rather, as Ranney testified, the physicians he consulted simply would not commit themselves, one way or the other. *Baines* is also factually distinguishable. In *Baines*, the plaintiff was told that the symptoms he experienced after surgery were temporary. 223 N.W.2d at 202. Consequently, he did not know or have reason to know the true nature of his injury so as to trigger a duty to investigate. *Id.* at 203. In contrast, Ranney knew the nature of his injury in 1985 when he was diagnosed with Hodgkin's disease.

link between his disease and his employment in February 1992. He filed his petition for workers' compensation benefits four months later.

The majority opinion suggests that once Ranney knew of his disease and its possible connection with his employment, he had a duty to investigate *and* the two-year statute of limitation period began to run. Apparently, once Ranney was under a duty to investigate (inquiry notice), it made no difference if a reasonable investigation revealed the cause of his Hodgkin's disease is unknown. This interpretation of the inquiry notice doctrine conflicts with the majority opinion statements that "[t]he purpose of the investigation is to ascertain whether the known condition is probably, as opposed to merely possibly, compensable," and that, when Ranney had enough information to trigger his duty to investigate, "[a]s of that date, Ranney was on notice of what a reasonably diligent investigation would have disclosed."

Ranney is not asking that the statute be tolled until the *successful completion* of his investigation. Inquiry notice did impose a duty on him to investigate. The limitation period should run only if a reasonably diligent investigation would disclose the probable compensable character of his injury. In our previous application of the inquiry notice doctrine, we stated:

> The information they possessed on the date of the accident was plainly sufficient to put them on inquiry notice concerning possible defects in the wagon. They did not investigate at that time. When they later investigated, they found the alleged defects they now rely on.

*Franzen v. Deere & Co.*, 377 N.W.2d 660, 663 (Iowa 1985), *quoted in Vachon v. State*, 514 N.W.2d 442, 447 (Iowa 1994).

In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Court in a medical malpractice suit filed in 1992 stated: "It is undisputed in this case that in January 1969 Kubrick was aware of his injury and its *probable* cause." *Kubrick*, 444 U.S. at 118, 100 S.Ct. at 357, 62 L.Ed.2d at 267 (emphasis added). The Court was addressing the application of the discovery rule where the plaintiff was ignorant of his legal rights, rather than ignorant of the fact of his injury or its causes. *Id.* at 123, 100 S.Ct. at 359, 62 L.Ed.2d at 269. After recognizing reasonably competent doctors would have known the plaintiff should not have been treated with Neomycin, the Court stated:

> Crediting this finding, as we must, Kubrick need only have made inquiry among doctors with average training and experience in such matters to have discovered that he probably had a good cause of action. The difficulty is that it does not appear that Kubrick ever made any inquiry, although meanwhile he had consulted several specialists about his loss of hearing and had been in possession of all the facts about the cause of his injury since January 1969. Furthermore, there is no reason to doubt that Dr. Soma, who in 1971 volunteered his opinion that Kubrick's treatment had been improper, would have had the same opinion had the plaintiff sought his judgment in 1969.

*Id.* at 122–23, 100 S.Ct. at 360–61, 62 L.Ed.2d at 269–70.

I do not agree the undisputed record of Ranney's repeated inquiry of many examining and treating physicians as to the cause of his Hodgkin's disease is insufficient to create a factual issue on the application of the discovery rule. The record establishes Ranney made reasonable inquiry, or at least the presence of a disputed factual issue on this question. There is no suggestion in the record that "in the exercise of reasonable diligence" or "in the exercise of a reasonably diligent investigation" Ranney, or a reasonable person, would have acquired actual or implied knowledge of the probable compensable nature of his claim before June 1990, two years prior to the filing of his claim.

Our court's application of the inquiry notice doctrine when a reasonably diligent investigation would not disclose the probable compensable character of the employee's injury, "guts" the basic requirement of the discovery rule that the limitation period begins when the employee discovered or should have discovered the *probable* compensable character of the injury. I would affirm the

summary judgment ruling dismissing the chapter 85A claim and reverse the ruling dismissing the claim under chapter 85. I would then remand to the industrial commissioner for further proceedings under chapter 85.

LARSON, LAVORATO, and SNELL, JJ., join this dissent.