Marvin ROYCROFT, as the Administrator of the Estate of Patricia Lange, Plaintiff,

v.

John Q. HAMMONS and Juanita Hammons, Individually; JQH Hotels, Inc., John Q. Hammons Hotels, L.P., and John Q. Hammons Hotel Two, L.P., d/b/a University Park Holiday Inn, Defendants.

No. 4:01–CV–40498.

United States District Court,
S.D. Iowa,
Central Division.

May 17, 2002.

Gregory W. Landry, Lamarca & Landry, West Des Moines, IA, for plaintiff.

Mark L. Tripp, Karl T. Olson, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. Plaintiff filed his complaint in Polk County District Court on August 13, 2001, alleging negligence on behalf of the University Park Holiday Inn.[1] The case was removed to this court on August 14, 2001.

Jurisdiction is predicated on 28 U.S.C. §§ 1332 and 1446.

On February 20, 2002, Defendants filed their Motion for Partial Summary Judgment along with Defendants' Statement of Undisputed Material Facts, Memo of Authorities, and Brief in Support of the motion. In their motion, Defendants contend that the statute of limitations bars Plaintiff's negligent security/innkeeping claims. Plaintiff filed a Resistance to Defendants' motion on March 28, 2001, along with his Brief, Statement of Additional Material Facts, and Response to Defendants' Statement of Undisputed Material Facts. Plaintiff's request for oral argument is denied, as the court is able to conclude on the written submissions that the current motion must also be denied.

## I. BACKGROUND

In the late evening or early morning hours of August 22–23, 1993, Patricia Lange ("Lange") was murdered in Room 732 of the University Park Holiday Inn in West Des Moines, Iowa. Lange had moved to West Des Moines from Denver, Colorado, to begin a new job at Norwest Mort-

---

1. Specifically, the complaint alleges that the University Park Holiday Inn ("Holiday Inn") breached its duty of care owed to Patricia Lange in the following particulars: (a) in negligently hiring Donald Piper ("Piper") without conducting a proper background check; (b) in negligently retaining Piper as chief engineer despite the fact that the Holiday Inn knew or should have known about his criminal history, his propensity for sexually harassing female employees, and his propensity for physically abusing female employees; (c) in negligently allowing Piper access to master keys in spite of its failure to conduct a background check; (d) in negligently allowing Piper access to master keys and failing to limit his access to the hotel while he was employed there and in negligently failing to limit Piper's access to the Holiday Inn and master keys following his "resignation", all in spite of the fact that Holiday Inn knew or should have known about Piper's criminal history, his propensity for sexually harassing women, and his propensity for sexually abusing women; (e) in negligently failing to situate Patricia Lange, a single female traveling alone, on a lower floor near an elevator in conformity with the written security guidelines of the Holiday Inn; (f) in negligently failing to provide proper security; and (g) in failing to act as a reasonable innkeeper under the circumstances then and there existing. These last three claims, termed "negligent security/innkeeping claims", are the subject of the present motion.

gage, and had been a guest of the hotel since her arrival on August 13, 1993. At approximately 11:00 a.m. on Monday, August 23, 1993, Lange's body was found on the floor of Room 732 by a Holiday Inn housekeeper. Lange was found lying near the bed with her wrists bound together in front of her body with a strip of torn white pillowcase. A similar cloth ligature was wrapped around her neck and mouth. A second ligature, a bent coat hanger, was looped around her neck and coiled tightly from behind. An autopsy revealed that the cause of death was due to ligature strangulation. No articles were missing from the room, and Lange's wallet, which contained $209, was left in her open briefcase. Lange's hotel room key was found on the floor near her body. Investigators found no bolt damage to the door or to the doorjamb, which would have indicated that the door had been pried open or forced open. As there was no evidence of any forced entry, investigators initially theorized that Lange knew her killer and had voluntarily let him into her hotel room.

The West Des Moines Police Department ("WDMPD") and the Iowa Division of Criminal Investigation ("DCI") conducted a joint investigation into the murder of Patricia Lange. As investigators initially proceeded on the theory that Lange knew her killer, the investigation focused on individuals who had some type of contact with Lange. Lange's activities during the days before her death were traced. Hotel guests and employees were interviewed, as well as Lange's co-workers at Norwest Mortgage. Investigators also conducted interviews with people that had contact with Lange during the last days of her life. During the course of the investigation, many individuals submitted samples for DNA testing. It was not until 1999 that sophisticated DNA analysis linked Donald Piper, a former employee of the hotel, to Room 732 and Lange's murder.

From April 27, 1987, to June 18, 1993, Piper had been employed as the chief engineer of the Holiday Inn. As part of his employment as chief engineer, Piper had access to both the "E" key and the master keys. The "E" key was an emergency key, providing the highest level of entry ability. In most cases, it was capable of overriding a dead bolt that had been thrown onto a room. The master keys allowed access into any room other than those in which the dead bolt had been thrown.

On or about June 18, 1993, Piper resigned his position as chief engineer at the Holiday Inn. Following the termination of his employment, Piper continued to frequent the hotel, and was often seen lingering in the "employees only" area. After the murder of Lange, investigators sent a questionnaire to all current and former employees seeking information regarding the murder. In response to the question, "List the five most important causes that could have created the situation", Piper responded, "Key control" and then "I do not know anymore". DNA testing later linked Piper to the murder scene. In January 2000, Piper was charged with the murder of Lange, and on June 4, 2001, Piper was convicted by a jury in Polk County Iowa District Court of first degree murder in the death of Patricia Lange.

Plaintiff Marvin Roycroft is the Executor and sole beneficiary of the Estate of Patricia Lange. Plaintiff was made aware of Lange's murder within two days after the body had been discovered. Plaintiff was advised by investigators during the summer of 1999 that Piper was a suspect in the murder. Plaintiff began to investigate a potential civil action against the Holiday Inn when he learned that its former chief engineer was the person responsible for the murder of Patricia Lange. On January 3, 2001, Plaintiff, in his capaci-

ty as executor and as sole beneficiary of Lange's estate, filed a Petition in Polk County Iowa District Court alleging Defendants, as owners and/or operators of the Holiday Inn, were liable in tort for the wrongful death of Lange while on the Holiday Inn premises. Plaintiff subsequently filed two Amended and Substituted Petitions on or about May 7, 2001, and July 25, 2001, which did not alter his lawsuit in any manner relevant to the present Motion. Defendants John Q. Hammons and Juanita Hammons were the owners of University Park Holiday Inn in West Des Moines in August, 1993.

## II. LEGAL ANALYSIS

### A. Standard of Review

"[C]laims lacking merit may be dealt with through summary judgment under Rule 56." *Swierkiewicz v. Sorema*, 534 U.S. 506, ——, 122 S.Ct. 992, 998–999, 152 L.Ed.2d 1 (2002). Summary judgment is a drastic remedy, and the Eighth Circuit has recognized that it "must be exercised with extreme care to prevent taking genuine issues of fact away from juries". *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1029 (8th Cir.2000); *Dodd v. Runyon*, 114 F.3d 726, 729 (8th Cir.1997); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Wabun–Inini*, 900 F.2d at 1238 (citing Fed.R.Civ.P. 56(c)).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue". *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548); *see also Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir.2001); *McGee v. Broz*, 251 F.3d 750, 752 (8th Cir.2001). Once the moving party has carried its burden, the opponent must show that a genuine issue of material facts exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The court gives the nonmoving party the benefit of all reasonable inferences and views the facts in the light most favorable to that party. *Lee–Thomas, Inc. v. Hallmark Cards, Inc.*, 275 F.3d 702, 705 (8th Cir.2002); *Llano v. Berglund*, 282 F.3d 1031, 1034 (8th Cir.2002); *Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir.2000); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir.1997).

"An issue of material fact is genuine if it has a real basis in the record." *Hartnagel*, 953 F.2d at 394 (citing *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348). The nonmoving party must go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial". Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir.1995).

"Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Shelton v. ContiGroup Companies, Inc.*, 285 F.3d 640, 642 (8th Cir.2002) (citing *Henerey v. City of St. Charles*, 200 F.3d 1128, 1131 (8th Cir.1999)). Summary

judgment should not be granted if the court can conclude that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991). In light of these standards, the court considers the present motion.

## B. The Discovery Rule/Inquiry Notice

■ There is a 2–year statute of limitation imposed upon injuries to persons. Iowa Code § 614.1(2). By statute, Plaintiff had two years from the date of Lange's death to file his claim. However, the discovery rule tolls the running of the statute until a plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the injury. *Rieff v. Evans,* 630 N.W.2d 278, 291 (Iowa 2001); *Woodroffe v. Hasenclever,* 540 N.W.2d 45, 46 (Iowa 1995); *Vachon v. State,* 514 N.W.2d 442, 445, (Iowa 1994); *Franzen v. Deere & Co.,* 377 N.W.2d 660, 662 (Iowa 1985); *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94, 100 (Iowa 1967). The duty to investigate begins once the claimant, within the context of reasonableness, knows his injury is possibly compensable. *Swartzendruber v. Schimmel,* 613 N.W.2d 646, 650 (Iowa 2000); *see also Ranney v. Parawax Co., Inc.,* 582 N.W.2d 152, 154 (Iowa 1998). Knowledge is imputed to a claimant when he gains information sufficient to alert a reasonable person of the need to investigate. *Ranney,* 582 N.W.2d at 155. *See Estate of Montag,* 509 N.W.2d at 470; *Franzen,* 377 N.W.2d at 662. As of that date, he is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation. *See Franzen,* 377 N.W.2d at 662. This court concludes that reasonable diligence does not require an investigation running collateral to, and potentially in competition with, law enforcement efforts to solve a murder case, nor pursuing a course of action in civil litigation that is materially inconsistent with the apparent focus of law enforcement.

■ The court cannot find as a matter of law that it was unreasonable for Plaintiff to rely on the investigators' initial belief that Lange knew her killer and voluntarily allowed that person into her room. Where the DCI and WDMPD, with their investigative tools and access to investigative avenues, believed that Lange knew her killer, it would establish an extraordinarily high standard to suggest that through a reasonably diligent investigation Plaintiff would have been able to discover that the killer was a stranger. There is more than a lack of information, or inadequate civil investigation, that prevented Plaintiff from discovering the elements of a negligent security/innkeeping claim. There are communications from law enforcement that are contrary to the security claims, affirmatively dissuading the Plaintiff from the security related claims, until such time as this assumption by law enforcement changed and it became clear that the alleged perpetrator was (1) a stranger to Lange, and (2) a person with access to hotel keys. Prior to 1999, it was not reasonable for the Plaintiff to suspect that security breaches which are the subject of the current motion played a causal role in Lange's death.

In June of 1999, police notified Plaintiff that Piper was a suspect. Plaintiff later learned in January of 2000 that Piper was a former employee of Defendants' hotel. Assuming that Plaintiff was put on notice immediately upon learning Piper was a merely a suspect, the action would have been timely filed.

Defendants point to cases holding that the identity of the murderer is irrelevant, but in those cases either investigators did not affirmatively opine that the victims knew their killers (*see Budoff v. Holiday*

*Inns, Inc.,* 732 F.2d 1523, 1524–25 (6th Cir.1984); *Fund v. Hotel Lenox of Boston, Inc.,* 418 Masss. 191, 635 N.E.2d 1189, 1191 (1994)), or the victims were rape survivors who were able to tell investigators that they did not know their attackers (*see Blaustein v. Gilbert–Dallas Co., Inc.,* 749 S.W.2d 633, 634 (Tex.Ct.App.1988); *Arroyo v. Fourteen Estusia Corp.,* 186 A.D.2d 476, 588 N.Y.S.2d 572, 573 (N.Y.App.Div.1992); *Tenney v. Atlantic Associates,* 594 N.W.2d 11, 13 (Iowa 1999)). The concept that Lange knew her killer is materially inconsistent with all of the security related claims, since a familiar person would have been undetected and undeterred by security.

Where the issue of limitations involves determinations [of when a claim begins to accrue], summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determinations can be made as a matter of law. *Hildebrandt v. Allied Corp.,* 839 F.2d 396, 399 (8th Cir.1987). Defendants concede that there is a factual question as to when Plaintiff could have learned of Piper's connection to the murder. Where the determination of when the cause of action accrued involves a material factual dispute, summary judgment is not appropriate. *Hines v. A.O. Smith Harvestore Products, Inc.,* 880 F.2d 995, 998 (8th Cir.1989).

### III. RULING AND ORDER

The Court finds that a genuine issue of material fact remains and Defendants are not entitled to judgment as a matter of law. The Motion for Summary Judgment is **denied**.

**IT IS SO ORDERED.**