# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3786

———————

| | | |
|---|---|---|
| John Q. Hammons Hotels, Inc.; | * | |
| John Q. Hammons Hotels, L.P., | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District Iowa. |
| Acorn Window Systems, Inc.; | * | |
| Nabholz Construction Corporation, | * | |
| | * | |
| Appellees. | * | |

———————

Submitted: June 17, 2004
Filed: January 7, 2005

———————

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

John Q. Hammons Hotels, Inc., and John Q. Hammons Hotels, L.P. ("Hammons") appeal from the district court's[1] grant of summary judgment in favor of Acorn Window Systems ("Acorn") and Nabholz Construction Corporation ("Nabholz") based on Iowa's statute of limitations. We affirm.

---

[1] The Honorable John A. Jarvey, Chief United States Magistrate Judge for the Northern District of Iowa, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.

This is a lawsuit for damages resulting from water infiltration at Hammons's Collins Plaza Hotel in Cedar Rapids, Iowa. Hammons alleges that window units designed, manufactured, and sold by Acorn's predecessor-in-interest suffered a problem called thermal break shrinkage.

Thermal break shrinkage occurs when a polyurethane break, which prevents transfer of heat or cold from the outside portion of the window to the inside portion and provides a moisture barrier, shrinks as a result of exposure to heat. The shrinkage of the thermal break creates a void that allows water to enter the window chamber and the wall system.

The Collins Plaza Hotel was constructed in 1987 and 1988, and the windows were delivered and installed by the time the hotel was completed. Nabholz was Hammons's general contractor, and it oversaw construction in conjunction with Hammons's project engineer.

The hotel experienced various instances of water intrusion. Shortly after the building was completed, water intrusion occurred through cracks in the exterior wall system, and Hammons made several attempts to repair the problem. In 1991, rainwater pooled in the window sills of certain rooms facing in the direction of high winds, and Hammons employees used towels to soak up the water. In the early to mid-1990s, pink mold formed on a number of walls, and employees applied bleach and replaced the vinyl wall covering. From 1990 to 1992, Hammons employees noticed occasional water leakage in the hotel's Cedar Rapids room and convention area when it rained, and efforts were made to remedy that problem. There is evidence in the record, however, to support Hammons's contention that some instances of water intrusion in the early 1990s were not a result of infiltration through the thermal break.

In 1998, Hammons employees noticed additional severe water problems. Hammons hired R.J. Kenney Associates, Inc., to investigate and remedy the water intrusion problems. The investigation revealed extensive damage. The investigators also observed that attempts had been made to repair the windows by pumping sealant into the receptor system. Russell Kenney, whose firm performed the investigation and was Hammons's expert, concluded that the sealant repairs were "definitely" intended to correct thermal break shrinkage in the windows. In a written report prepared for Hammons in 2002, Kenney opined that "[i]n 1990 and 1991, repairs were made to a number of windows in an attempt to compensate for the shrinkage of the polyurethane thermal break." (App. at 157). He observed that "[t]hese repairs were similar in scope to repairs made on several other John Q. Hammons Hotels projects," (*id.*), although the windows at other hotels were manufactured by companies other than Acorn. (*Id.* at 98). Kenney's report opined that 10 percent of the damage caused by thermal break shrinkage occurred between 1988 and 1990, and that another 30 percent took place between 1990 and 1993. (*Id.*). Kenney later testified at deposition that he was told by hotel employees that repairs were made in 1991 and 1993 to address the shrinkage. (*Id.* at 96). He further testified that repairs were conducted on 85 percent of the hotel's windows between 1990 and 1993. (*Id.* at 99).

Hammons sued Acorn in the district court in November 2001, alleging breach of contract, negligence, breach of express warranty, breach of implied warranty, strict liability, and negligent misrepresentation. Hammons filed its action against Nabholz in December 2002, alleging breach of contract and negligence. After discovery, Nabholz and Acorn moved for summary judgment on a number of grounds. On October 15, 2003, the district court granted summary judgment in favor of Nabholz and Acorn based on Iowa's statute of limitations.

II.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment *de novo*. The parties agree that Iowa law applies to this case.

Hammons argues that all of its claims were filed within the statute of limitations. The company contends that Iowa's ten-year statute of limitations applies to its claims for breach of written contract and breach of written warranty, and that Iowa's five-year statute of limitations applies to its claims for breach of implied warranty, negligent misrepresentation, negligence, and strict liability. Iowa Code § 614.1. Hammons argues that the "discovery rule" should be applied in determining the statute of limitations. The discovery rule prevents the statute of limitations from commencing to run until such time as a plaintiff knows, or should have known through the exercise of reasonable diligence, of the injury sustained. *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985); *Brown v. Ellison*, 304 N.W.2d 197, 200 (Iowa 1981). When the discovery rule applies, the limitations period begins when a party is on "inquiry notice," which means that a party is charged with knowing "what a reasonable investigation would have disclosed." *Franzen*, 377 N.W.2d at 662. Hammons asserts that it did not discover the alleged injuries until 1998, so all of its claims were timely when filed in 2001 and 2002.

We assume without deciding that the discovery rule and statutes of limitations apply as suggested by Hammons. Our analysis focuses on the date of discovery. If discovery occurred by November 1991, then each of Hammons's causes of action – even those based on the lengthy ten-year statute for written contracts and express warranties – are time barred.

-4-

"While a statutory time bar is an affirmative defense that must be established by the defendant, a plaintiff claiming the application of the delayed discovery rule has the burden of proving it." *Estate of Montag v. T H Agric. & Nutrition Co.*, 509 N.W.2d 469, 470 (Iowa 1993); *see also Sparks v. Metalcraft, Inc.*, 408 N.W.2d 347, 350 (Iowa 1987). To survive summary judgment, Hammons must come forward with evidence tending to show that "with reasonable diligence [it] could not have discovered" the thermal break problem until a period within ten years of filing its claim. *Brown*, 304 N.W.2d at 202. Such evidence, moreover, must present a genuine issue of material fact – "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The evidence is viewed in the light most favorable to the non-moving party, and Hammons is entitled to "justifiable inferences" that can be drawn without resort to speculation. *Id.* at 255; *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004). Summary judgment against Hammons is appropriate, however, if a reasonable jury could *only* conclude that Hammons knew or should have known more than ten years before filing its action that thermal break shrinkage had occurred. *See Bressler v. Graco Children's Prods., Inc.*, 43 F.3d 379, 380-81 (8th Cir. 1994) (applying Iowa law).

No reasonable jury could find that Hammons employees at the Collins Plaza Hotel were unaware of the repairs made to ameliorate the effects of thermal break shrinkage prior to November 1991. With respect to the timing of repairs, Hammons concedes that Kenney, its consultant/expert, found evidence of repairs to the windows in 1991, as well as 1993. (Hammons Br. at 26; App. at 96). This concession is consistent with Kenney's statement in his written report that 10 percent of the damage caused by thermal break shrinkage occurred between 1988 and 1990, and that repairs were made to a number of windows in 1990 and 1991 in an attempt to compensate for the shrinkage. (App. at 98, 157).

Hammons employees must have known of the repairs performed in 1990 or 1991. The notion that Acorn's predecessor was able to gain entry to guest rooms at the hotel to make these repairs without the knowledge of any Hammons employee defies credulity. Indeed, the district court found, and it is undisputed on appeal, that during their investigation of Hammons's water intrusion problems, Hammons's own experts could not enter guest rooms at the hotel without notifying hotel personnel and making arrangements with them to gain access to the rooms. Hammons even concedes that the evidence concerning two sets of repairs to the windows in the early 1990s "suggests that someone employed by Hammons informed Nabholz or [Acorn's predecessor] of the instances of water intrusion being experienced at the hotel . . . ." (Hammons Reply Br. at 10 n.7). Based on the undisputed evidence, no reasonable jury could find that numerous hotel rooms were accessed and significant repairs completed without knowledge of hotel employees.

Nor do we think there is a genuine issue of material fact as to whether Hammons was on notice of these repairs. Hammons managers testified that the Hammons corporate office typically would have known of such significant repairs. (App. at 105, 277). But even if that were not so, the undisputed facts demonstrate that the knowledge of the hotel employees regarding the repairs is properly imputed to Hammons. Iowa subscribes to the well-settled rule that "ordinarily knowledge of an agent is imputed to the principal." *Mechanicsville Trust & Sav. Bank v. Hawkeye-Sec. Ins. Co.*, 158 N.W.2d 89, 91 (Iowa 1968); *see also Rohlin Constr. Co. v. Lakes, Inc.*, 252 N.W. 2d 403, 405 (Iowa 1977). It has long been held in Iowa that where information is imparted to an employee, acting within the scope of his employment, the knowledge of the employee is imputed to the employer under principles of agency law. *See Gensburg v. Field*, 74 N.W. 3, 4-5 (Iowa 1898); *Briney v. Tri-State Mut. Grain Dealers Fire Ins. Co.,* 117 N.W.2d 889, 894 (Iowa 1962); *see also* Restatement (Second) of Agency §§ 9(3), 272 & cmt. c., illus. 6. Hammons's agents ran the Collins Plaza Hotel when repairs were made to the windows, and it is undisputed that in granting access to whomever made the repairs, Hammons's employees were acting

within the scope of their employment. Their knowledge of the repairs, therefore, is properly imputed to Hammons, the employees' principal.

No reasonable jury could find that Hammons's knowledge of the thermal break repairs made in 1990-91, combined with its knowledge of consistent incidents of water intrusion beginning shortly after the hotel was constructed, was insufficient to put Hammons on inquiry notice regarding the thermal break shrinkage problem. Knowledge of the exact nature of a problem is not required in order for the statute of limitations to commence. *Roth v. G.D. Searle & Co.*, 27 F.3d 1303, 1306 (8th Cir. 1994) (applying Iowa law). Instead, "[k]nowledge is imputed to a claimant when he gains information sufficient to alert a reasonable person of the need to investigate." *Ranney v. Parawax Co., Inc.*, 582 N.W.2d 152, 155 (Iowa 1998). As of the date that a claimant gains such information, "he is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation." *Id.* "'The question in any given case is not, What did plaintiff know of the injury done him? but, What might he have known, by the use of the means of information within his reach, with the vigilance which the law requires of him?'" *Sparks*, 408 N.W.2d at 351 (quoting *Chrischilles v. Griswold*, 150 N.W.2d 94, 100 (Iowa 1967)). Because Hammons knew that repairs were made to a number of the hotel windows in 1990-91, the hotel then had information indicating that an investigation was required. Hammons's own expert later opined that the purpose of the repairs was definitely to remedy the effects of the thermal break shrinkage. Thus, a reasonable investigation would have discovered the problem with thermal break shrinkage more than ten years before the filing of this action.

Hammons has failed to raise a genuine issue of fact as to whether, through the exercise of reasonable diligence, it should have known of the thermal break defect in the hotel windows more than ten years before commencement of its action. Accordingly, Hammons's claims are barred by the statute of limitations, and the judgment of the district court is affirmed.

_____