**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  05a0789n.06
Filed:  September 12, 2005

**No. 04-3472**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ANGUS N. MacPHAIL, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant; | ) | |
| | ) | |
| SARAH W. CRANE, | ) | |
| | ) | |
| Defendant-Cross-Appellee. | ) | |

Before:      BOGGS, Chief Judge; ROGERS, Circuit Judge; and SHADUR, District Judge.[1]

BOGGS, Chief Judge.  This case concerns the allegedly erroneous repayment of a tax refund by the IRS.  Appellant Angus MacPhail appeals from a grant of summary judgment to Appellee the United States on its claim that a tax refund MacPhail received properly belonged in its entirety to his ex-wife Sarah Crane, and from denial of his own summary judgment motion on his cross-claim against cross-Appellee Crane that she should reimburse him for any money he had to repay to the IRS.  We affirm the district court's ruling that MacPhail had no right to the tax refund from the IRS, but we vacate the court's ruling that the refund was Crane's sole

---

[1] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

separate property, and we dismiss the cross-claim for lack of subject matter jurisdiction under the domestic relations exception.

**I**

Sarah Crane and Angus MacPhail were married in 1983. Wishing to end their marriage, on April 9, 1997, they entered into a separation agreement. This agreement represented, in theory, a complete settlement of all property rights between the parties, and each party released the other from any interest in the other's property. On July 1, 1997, the Licking County Common Pleas Court, Division of Domestic Relations, issued a Judgment Entry Decree of Dissolution incorporating the April separation agreement and dissolving the couple's marriage.

Until the dissolution of the marriage, the couple filed a joint Form 1040 United States Individual Income Tax Return. As part of the dissolution agreement, they opted to file their 1996 income tax jointly, while future income tax returns would be filed separately. The separation agreement made no provision for any refund arising from the 1996 return.

The couple's 1996 tax liability was determined by December 31, 1996. Most of the income the couple declared on their tax return came from Crane's family money. The district court found that in 1996, 99% of the couple's $1,853,533.00 in gross income came from Crane's family money; $87.00 was attributable to MacPhail alone; and the couple had a joint loss of $45,014, due mostly to the operation of Columbus Alive!, a free local newspaper that the couple published. Crane and MacPhail earned no wages from the newspaper.

Between 1991 and 1996, Crane and MacPhail's joint income taxes were paid in full by Stanbery, Ltd., a general partnership set up by Crane and her siblings to disburse money earned

from investments and from the family businesses. Crane had a one-quarter ownership interest in Stanbery. MacPhail had no ownership interest, control, or participation in the partnership.

Stanbery customarily paid the estimated taxes for Crane and MacPhail in quarterly installments. Prior to the signing of the separation agreement, Stanbery had already paid $384,563.32 in estimated taxes on the couple's behalf. This represented $190,464 less than the couple's total 1996 tax liability. On April 15, 1997, Stanbery applied for a filing extension, and at the same time sent in a check for $490,000, because it was Stanbery's practice to make the following year's estimated first quarterly payment when filing for a due date extension. The $490,000 check was drawn on Stanbery, Ltd., and the memo line read "Angus MacPhail [social security number] Form 4868 1996 Ext.," because the couple's joint returns were indexed by the IRS under MacPhail's taxpayer number. Crane and MacPhail signed and filed their 1996 joint income tax return on October 15, 1997. The return elected to have the overpayment of $299,536 applied to the filers' estimated tax liability for 1997.

In 1998, MacPhail filed his individual return, reflecting taxable income of $10,675 and a tax liability of $1,275, which he paid in full upon filing. He claimed no part of the 1996 overpayment, nor did he request any portion of it as a refund. As usual, pursuant to a filing extension, Crane did not file her 1997 returns until October 1998, and on her returns she listed the entire 1996 overpayment as taxes she had paid. In the meantime, however, on June 8, 1998, on its own initiative and without audit or examination, the IRS refunded the entire $299,536 to MacPhail as an overpayment on his 1997 returns. Subsequently, upon receiving Crane's 1997 returns, the IRS refused to credit the 1996 overpayment against her 1997 tax liability.

In 1999, the IRS twice refused Crane's request to credit the overpayment to her, stating that division of the refund was a civil matter between her and MacPhail. Eventually the IRS changed its mind, and on February 22, 2000, the agency notified MacPhail that the refund had been erroneous and gave him until March 29 to repay it without interest penalty. In late March 2000, the IRS credited the entire $299,536 to Crane's 1997 tax account. MacPhail refused to repay the refund and litigation followed.

Initially, the IRS brought suit against MacPhail on May 31, 2000, pursuant to I.R.C. §§ 7401 and 7405(b), (26 U.S.C.), alleging that the refund to MacPhail was erroneous and that the overpayment was properly attributable to Crane. In August 2001, after the completion of discovery, the United States was permitted to amend its complaint in order to join Crane as a defendant, on the ground that MacPhail had raised sufficient material questions about the proper allocation of the refund to make Crane a necessary party.

Crane denied any liability as to the United States and cross-claimed against MacPhail to recover from him any amount the United States might recover from her. In response, MacPhail cross-claimed against Crane for any amount the United States might be awarded from him. In October 2002, Crane moved for summary judgment on her cross-claim against MacPhail and on the claims of the United States and MacPhail against her. MacPhail moved for summary judgment on Crane's cross-claim against him. In June 2003, the district court granted Crane's motion against the United States and denied MacPhail's motion against her on the ground that refunds are distributed in proportion to the amount the spouses paid in taxes, and the entire $490,000 final payment, which the court found generated the overpayment, was made out of

money controlled by Crane.  The judge dismissed as moot Crane's motion against MacPhail's cross-claim since it sought relief only to the extent that the United States prevailed against her.

Relying on the grant of summary judgment in favor of Crane, the United States then moved for summary judgment against MacPhail.  In February 2004, the district court granted the motion, directing judgment in favor of the United States in the amount of $299,536 plus interest.  MacPhail appeals the decisions against him.  The United States does not appeal the grant of summary judgment to Crane against the United States.

## II

The grant of summary judgment on behalf of the Government against MacPhail raises questions that are different from and prerequisite to the dispute between MacPhail and Crane, so we will begin with the question of the ownership of the 1996 overpayment from the perspective of federal tax law and then turn to the cross-claims concerning the payment of indemnification between the former spouses.

The court reviews *de novo* a grant of summary judgment.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  Summary judgment is proper when the facts, viewed "in the light most favorable to the nonmovant," demonstrate no genuine issue of material fact and demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *accord Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The district court held that Crane was entitled to the refund because, under the tax code, overpayments by joint filers are apportioned in proportion to each filer's contribution to the overpayment, and Crane's final payment of $490,000 generated the entire overpayment.  While

we agree with the district judge's conclusion, we do not agree with his reasoning. According to

26 U.S.C. § 6513(b)(2), "[a]ny amount paid as estimated income tax for any taxable year shall be

deemed to have been paid on the last day prescribed for filling the return . . . for such taxable

year (determined without regard to any extension of time for filing such return)." In other

words, all of the money that Crane and MacPhail paid in estimated taxes in 1996 and as carry-

over from their 1995 taxes was deemed paid on April 15, 1997. Therefore, the final payment of

$490,000 did not itself create the overpayment. Furthermore, under 26 U.S.C. § 6407, an

overpayment credit does not exist until the IRS authorizes the refund or credit. The simple act of

sending in the check on April 15, 1997 did not call into existence a tax overpayment.

As many courts have noted, 26 U.S.C. § 6402(a) permits the IRS to credit an

overpayment to "the person who **made** the overpayment . . . ." (Emphasis added.) The person

who made the payment does not have to be the person who incurred the liability. *United States

v. Elam*, 112 F.3d 1036, 1038 (9th Cir. 1997) ("Simply put, the person who overpaid is entitled

to claim the overpayment credit."). In the case of joint filers, "a joint income tax return does not

create new property interests for the husband or the wife in each other's income tax

overpayment. [T]he wife having paid the entire amount of the tax is entitled to the entire amount

of the overpayment. Accordingly, the Service may not credit the overpayment on the joint return

against the separate tax liability of the husband for a prior year." Rev. Rul. 74-611, 1974-2 C.B.

399. Therefore, courts have consistently found that a refund should be disbursed in proportion to

the amount each spouse paid to the taxes owed. *Ragan v. Comm'r*, 135 F.3d 329, 333 (5th Cir.

1998) ("'the source of an overpayment of income tax determines the character of the refund . . .

.' *In re Bathrick*, 1 B.R. 428, 430 (Bkrtcy. S.D. Tex. 1979)"); *Elam*, 112 F.3d at 1038; *Conklin v. Comm'r*, 897 F.2d 1027, 1031 (10th Cir. 1990); *Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir. 1985).

While Crane certainly benefitted from filing her 1996 taxes jointly because it enabled her to take additional deductions, arising in particular from a large loss on Columbus Alive!, which she would otherwise have had to split with MacPhail, the fact that MacPhail's portion of the deductions changed the total tax *liability* is irrelevant to the consideration of the proper ownership of the overpayment. The IRS looks to the source of the payment, not to the person who incurred the liability. Between 1991 and 1996, Stanbery, Ltd. paid all of the joint taxes of Crane and MacPhail, including the credit from 1995 that was used to make the first quarter estimated 1996 tax payment. Only Crane had any interest in Stanbery, therefore the money is attributable only to her.[2]

The Government seeks to recoup the refund from MacPhail under 26 U.S.C. § 7405(b), which gives it the right to recover "[a]ny portion of a tax imposed by this title which has been erroneously refunded . . . ." To obtain repayment for an allegedly erroneous refund under 26 U.S.C. § 7405(b), the Government must show that the money was erroneously paid and that the

---

[2] MacPhail claims in a deposition and brief that he and his wife "loaned" money to Crane Plastics in approximately 1991, and that therefore this gives him an interest in some of Stanbery's funds. Crane Plastics, a family-owned business, operated as a family bank for family deposits. Stanbery, Ltd., however, was a general partnership independent of Crane Plastics, which disbursed funds generated by investments and profits earned by the group of Crane-family businesses. Furthermore, MacPhail did not substantiate his claims with any evidence other than his own assertions.

Government brought suit within the two-year statute of limitations. In some circuits, case law has added a judicial gloss that it not be inequitable to require repayment. MacPhail argues that § 7405(b) does not apply because the refund was not erroneous and because the Government is equitably estopped under a theory of unjust enrichment from recovering the money after it twice ruled the refund was rightly his. We do not agree with MacPhail's arguments.

MacPhail contends that the refund was not erroneous because the IRS gave the refund voluntarily, based on its own initial mistake of fact concerning ownership of the refund. Section 7405(b) does not explain what makes a refund "erroneous." But nothing in the statute or in prior judicial interpretation of § 7405(b) indicates that the voluntariness of the refund plays any role in adjudicating the question of error. The obvious consequence of MacPhail's claim would be that the IRS could not demand repayment of refunds that were made knowingly and voluntarily, but contrary to the tax code, and would very rarely be able to recover windfalls that taxpayers received but did not legally deserve. Under the plain language of 26 U.S.C. § 7405, "[t]he government is entitled to recoup the refund . . . . Equity has no power to change this wholly legal result." *Valley Ice & Fuel Co. v. United States*, 30 F.3d 635, 640 (5th Cir. 1994). Moreover, MacPhail's position also violates the long-standing policy that the Government should not be harmed by the actions of its agents in incorrectly disbursing funds from the public fisc when the error arose from a mistake of fact.[3] *Wisconsin Cent. R.R. v. United States*, 164

---

[3] MacPhail relies on an out-of-context passage from a district court case from 1927 to argue that the Government is obligated by the voluntary payment "made by it through its duly authorized representatives . . . ." *United States v. Detroit Steel Prods. Co.*, 20 F.2d 675, 677 (E.D. Mich. 1927). In *Detroit Steel*, however, the issue was one of a change in the law. For

U.S. 190, 212 (1896) (reaffirming "the principle that parties receiving moneys illegally paid by a public officer are liable *ex aequo et bono* to refund them."); *United States v. Burchard,* 125 U.S. 176, 180-81 (1888) (Government may recover monies paid out due to mistake of fact); *see also United States v. Wurts*, 303 U.S. 414, 415 (1938) ("The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid.").

Nor is MacPhail entitled to keep the refund under the doctrine of unjust enrichment. He argues that after the IRS gave him the money, it twice reaffirmed its distribution of the refund to him as a matter of law, and therefore he reasonably believed the money was his, so the Government is not entitled to restitution. However, we have been very clear in the past that a mistake of law by a Government agent, acting without audit or examination, does not amount to an act or interpretation upon which MacPhail could justifiably rely. *United States v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992) ("'[T]hose who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to the law.'") (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 63 (1984)); *Beer v. Comm'r of Internal Revenue*, 733 F.2d 435, 437 (6th Cir. 1984) ("The administrative refunds . . . did not amount to a final determination of the tax that might ultimately be due; they were subject to final audit and adjustments."); *Comm'r of Internal Revenue v. Mooneyhan*, 404 F.2d 522, 528 (6th Cir. 1968)

---

several years Detroit Steel paid an excise tax on a product it manufactured. The IRS then issued a ruling that the product was not subject to the tax. Detroit Steel applied for and was granted a refund of its payments. The following year, the IRS reversed itself, deciding that the prior ruling had been incorrect, and demanded that Detroit Steel pay the back taxes. The court found that Detroit Steel had paid the taxes, that the IRS had decided the taxes were not owed, and that it could not then later change its mind and penalize the taxpayer for not paying the tax.

("The doctrine of equitable estoppel . . . cannot prevent the Commissioner from correcting a mistake of law no matter where respondent was led."). *See also* Restatement (First) of Restitution § 46 (1937) ("A person who has conferred a benefit upon another because of an erroneous belief induced by a mistake of law that he is under a duty to do so, is entitled to restitution as though the mistake were one of fact if: (a) the benefit was conferred by a State or subdivision thereof . . . .") In addition, the initial IRS letters did not affirmatively instruct MacPhail that the refund was his. Instead, they indicated that the dispute "was a civil matter" that "fall[s] under the jurisdiction of a state court," so he was on notice that no final decision had been made. Finally, the fact that MacPhail did not report the 1996 overpayment on his 1997 return indicates rather forcefully that he had no expectation that any of that money was his.

Therefore, with regard to the IRS's involvement, we hold that the district court did not err in granting the Government's motion for summary judgment and awarding the entire overpayment to Crane.

## III

We now turn to the state law matter of the cross-claims for indemnification between the former spouses. As a threshold matter, we must consider whether the district court properly took supplemental jurisdiction over the cross-claims. While the cross-claims would appear to fall under that court's ancillary jurisdiction because they "aris[e] out of the transaction or occurrence that is the subject matter of . . . the original action," Fed. R. Civ. P. 13(g), whenever a claim concerns marital matters, we must decide whether the family law character of the claim precludes the exercise of supplemental jurisdiction. *Ex parte Burrus*, 136 U.S. 586, 593-94

(1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."); *Mansell v. Mansell*, 490 U.S. 581, 587 (1989) ("[D]omestic relations are preeminently matters of state law"); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern"). In general, this exception extends to questions of divorce, alimony, and child custody. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). "Thus, while rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue . . . , in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, __, 124 S. Ct. 2301, 2309 (2004).

The district court believed that it had jurisdiction because it characterized the overpayment as arising solely from the $490,000 paid by Stanbery on April 15, 1997, several days after the couple had signed the separation agreement. However, as explained above, the district court erred in determining the source of the tax overpayment based solely on the origin of the April 15 payment. Instead, the court was required to take into account the totality of the tax payments made during the 1996 tax year. Thus, resolution of the indemnification cross-claims requires allocation of the refund into some combination of separate or marital property. We decline to hazard an opinion as to what that division will or should be because the determination is solely resolved by Ohio domestic relations law.

The division of property as either separate or marital raises exactly the kind of "delicate issue[ ]" that is more "appropriate for the federal courts to leave . . . to the state courts."

*Newdow*, 124 S. Ct. at 2309; *see also McLaughlin v. Cotner*, 193 F.3d 410, 413-14 (6th Cir. 1999) (holding in case arising under diversity jurisdiction that federal court lacked jurisdiction in case "arising out of conflict over a divorce decree"). Under these circumstances, we hold that Ohio courts are the more appropriate forum for deciding how the money credited to Crane by the IRS should be divided, if at all, between the former spouses. *United States v. Confederate Acres Sanitary Sewage & Draining Sys., Inc.*, 935 F.2d 796, 800 (6th Cir. 1991) (federal courts "should avoid needless decisions of state law both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law.").

## IV

In light of the foregoing, we **AFFIRM** the grant of summary judgment on behalf of the Government, but we **VACATE** the denial of MacPhail's motion for summary judgment and direct that the district court **DISMISS** MacPhail's cross-claim.