# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3417

_____

United States of America

*Plaintiff - Appellee*

v.

Jo Anna Bame; Hook 'N Horn, Ltd.; Hook 'N Horn Wilderness Camp, Ltd.; I Am Home, Inc.

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2013
Filed: August 9, 2013

_____

Before LOKEN, BRIGHT, and BYE, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Fred Bame received an erroneous tax refund of over $500,000 in 2005. After the IRS discovered the error, the government filed suit to recover the money from Fred. When Fred died and the government was unable to collect from his estate, the government then filed suit against Jo Anna Bame, Fred's ex-wife, and two corporations owned by Jo Anna. The district court granted summary judgment to the

government based on the claim of unjust enrichment. The court awarded the government $526,022.13 in damages and held Jo Anna and the corporations jointly and severally liable. Jo Anna and the corporate defendants appeal. We reverse and remand.

I.

Fred and Jo Anna Bame married in 1992. Throughout their marriage, Jo Anna assisted Fred financially. One of the non-marital assets Jo Anna brought into the marriage was her home at 5110 Meadville in Excelsior, Minnesota. After they married, Jo Anna added Fred's name to the title of 5110 Meadville to allow him to borrow against the home's value. In 1995, the Bames took out a new mortgage on 5110 Meadville which secured a loan of $1,207,120. The funds from this loan were used to pay a number of large debts that were solely Fred's. During the marriage, a number of tax liens attached to 5110 Meadville based on tax obligations incurred solely by Fred or his companies.

In 1999, Fred was forced into involuntary bankruptcy. Jo Anna filed a Proof of Claim in the bankruptcy proceeding in the amount of $1,228,984, based on the mortgage taken out on her home and a number of other debts Fred owed her. Fred admitted that he owed Jo Anna approximately $1.5 million. The bankruptcy trustee commenced an adversary proceeding against Jo Anna, alleging that Fred made fraudulent transfers to Jo Anna prior to the bankruptcy filing. These matters were settled when Jo Anna and the trustee agreed to drop the Proof of Claim and the adversary proceeding, respectively. Fred did not receive a discharge in the bankruptcy proceeding, meaning his personal debts survived the bankruptcy.

The Bames divorced in 2001. The divorce decree required Fred to pay the tax liens on 5110 Meadville and any personal debts he incurred during the marriage. In 2003, Jo Anna sold 5110 Meadville for $1,520,000. Nearly $400,000 of the proceeds from the sale went to pay the tax liens on the property or Fred's other creditors.

In May 2005, the IRS sent Fred a letter indicating he would receive a tax refund. Fred called the IRS twice to inquire about the refund. A number of IRS employees conferred and determined Fred was entitled to the refund. Fred was assured by IRS employees that the refund was forthcoming. Jo Anna was privy to the IRS assurances and took notes about Fred's communications regarding the refund. In July, a letter from the Taxpayer Advocate Service confirmed that the refund would be mailed on July 29, 2005. The IRS issued Fred a refund check in the amount of $568,022.13. Apparently, the refund was issued due to error by the IRS regarding the taxation of Fred's bankruptcy estate. The IRS did not discover its error until January 2006.

At the time the refund check was issued, Fred was living at Hook 'N Horn Wilderness Camp in Nestor Falls, Ontario, Canada, which was owned by Jo Anna. Every few weeks, Jo Anna or another relative would gather the mail sent to Fred in Minnesota and take it to him in Canada. Thus, Fred and Jo Anna were in Canada when they opened the refund check. They deposited the check in a joint account at a bank in Nestor Falls, Ontario. Fred spent the refund quickly. On the same day as the deposit, Fred wrote checks totaling $350,000 to settle various debts Jo Anna owed. Five days later, Fred paid another $100,000 to Hook 'N Horn. Jo Anna later paid $32,500 back to Fred from the Hook 'N Horn account. Fred made additional withdrawals from the account totaling $42,000. Several other withdrawals were made over the telephone, so there is no record of who made the withdrawal or how the funds were spent.

In July 2007, the United States filed suit against Fred seeking to recover the erroneous refund. Fred died on September 9, 2007. The United States engaged in probate proceedings and obtained a judgment against Fred's estate for the full amount of the refund plus interest. However, the government was unsuccessful in collecting any of its judgment from Fred's estate.

Thwarted in its first attempt to recover the refund, the United States filed the underlying suit in this case against Jo Anna and two entities, I Am Home, Inc. and Hook 'N Horn. I Am Home is a corporate name used by Jo Anna. Hook 'N Horn is a fly-in fishing resort in Canada. Hook 'N Horn was originally owned by Fred, but he transferred ownership to Jo Anna in 1998. From 1998 to 2008, Jo Anna operated Hook 'N Horn as a sole proprietorship. In 2008, Jo Anna formed the corporate entity Hook 'N Horn, Ltd., sold the assets of the sole proprietorship to the corporation, and in return received shares in the corporation and a promissory note. Jo Anna formed the corporation after the United States commenced its suit against Fred but years before the government ever filed suit against her. Jo Anna testified that she was advised to form a corporation due to the risk of Hook 'N Horn guests suffering injury.

In Count I of the underlying action, the government sought recovery of the refund under both the Minnesota Fraudulent Transfer Act, Minn. Stat. § 513.44, and the Federal Debt Collection Procedure Act, 28 U.S.C. §3301 *et seq.* Counts II and III of the complaint sought recovery under the equitable theories of money had and received, and unjust enrichment. The parties filed cross-motions for summary judgment. The district court granted summary judgment for the government and entered judgment against Jo Anna in the amount of $526,022.13, holding I Am Home and Hook 'N Horn jointly and severally liable for portions of the judgment. The district court granted summary judgment on the unjust enrichment claim only, and did not discuss or rule on the statutory claims, noting only that they "raise several issues" which the court "need not address."

## II.

On appeal, Jo Anna argues that the district court erred by granting summary judgment to the government because there were two genuine issues of material fact: her good faith and her entitlement to the money. In addition, she argues that summary judgment was granted in error because unjust enrichment is legally unavailable.

-4-

Finally, Jo Anna argues that the district court erred in setting the amount of damages and by holding Hook 'N Horn liable under an alter ego theory. We review the summary judgment determination de novo. *Specht v. City of Sioux Falls*, 639 F.3d 814, 819 (8th Cir. 2011).

In considering the government's motion for summary judgment, the district court should have viewed the record in the light most favorable to Jo Anna and given her the benefit of all reasonable factual inferences. *Weber v. American Express Co.*, 994 F.2d 513, 515 (8th Cir. 1993). Furthermore, at the summary judgment stage, the court is not permitted to "weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). Viewing the record in the light most favorable to Jo Anna, as we must, and abstaining from any credibility determinations, we conclude that genuine issues of material fact existed and the grant of summary judgment to the government was error.

First, there is a genuine issue of material fact as to Jo Anna's good faith defense. The district court noted that if Jo Anna received the money in good faith, without knowledge that the refund was a mistake, she would have a valid defense to the claim of unjust enrichment. *United States v. Bame*, No. 11-62, 2012 WL 3544762, at *4 (D. Minn. Aug. 16, 2012). Jo Anna argues that the record establishes her good faith because at the time she received the money, she had no idea the refund was mistaken. The IRS gave Fred multiple assurances that the refund was proper, and Jo Anna was privy to this information.[1] Fred and Jo Anna filed separate tax returns, so

---

[1]The district court incorrectly concluded that Jo Anna could not rely on these assurances, citing *United States v. MacPhail*, 149 F. App'x 449, 454 (6th Cir. 2005). *MacPhail* only stands for the proposition that a party cannot rely on the mistaken assurances of a government employee to estop the government. *Id.* Jo Anna seeks not to estop the government, but to establish a good faith defense to unjust enrichment. Neither *MacPhail* nor any other source prohibits us from considering the IRS assurances as one fact indicating Jo Anna's good faith.

Jo Anna had no way to know whether the refund was a mistake. The district court did not mention Jo Anna's innocent explanation for the deposit of the refund check in Canada: Fred was living in Canada at the time and in fact opened the refund check in Canada. The only way to conclude that Jo Anna knew Fred was not entitled to the refund is to ignore all the facts in her favor and draw factual inferences against her, instead of in her favor. This is not appropriate at the summary judgment stage.[2]

Second, there is a genuine issue of material fact as to Jo Anna's entitlement to the money Fred transferred to her. There can be no unjust enrichment when a defendant is entitled to the money, by contract *or otherwise*. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 554 (8th Cir. 2008) (emphasis added). Although there is no written contract detailing Fred's debt to Jo Anna and thus her entitlement to the money, Jo Anna presented evidence that she was otherwise entitled to the funds. The record shows that Jo Anna paid a number of debts that were solely Fred's. Jo Anna's settlement with the bankruptcy trustee only terminated Jo Anna's claim against the bankruptcy estate. It did not change the status of Fred's personal debts to Jo Anna, which were not extinguished at the conclusion of the bankruptcy proceeding. Thus, the district court incorrectly concluded that there was no support in the record for Jo Anna's entitlement to the money.

---

[2]We express no opinion as to whether good faith is a valid defense to unjust enrichment. It does not appear such defense has been explicitly recognized by this court or the courts of Minnesota. Assuming, as the district court did, that the defense is valid, we merely conclude that the district court improperly weighed the evidence by concluding no genuine issue of fact existed.

The district court erred by granting the government summary judgment because there are genuine issues of material fact.[3]  Therefore, we reverse and remand to the district court for further proceedings.

## III.

Jo Anna also argues that the district court erred by granting summary judgment because no relief based on unjust enrichment may be had when a party has another remedy at law.  This presents a serious question that we need not resolve at this time because we remand the case for further consideration.  Nonetheless, we point out the following regarding the unjust enrichment claim, which should be considered by the district court on remand.

---

[3]Although we need not address Jo Anna's arguments regarding the damages award, we note that there is no basis to award the government $526,022.13, for any successful claim against Jo Anna.  In the complaint, the government requested damages in the amount of the "value of the transfers."  The record demonstrates that Jo Anna received $450,000 from Fred.  The record also shows that she returned $32,500 to Fred from the Hook 'N Horn account, bringing her receipts to $417,500.  Any judgment for more than $450,000 would seem to be unjustified.

Furthermore, should any judgment be entered against Jo Anna as this litigation proceeds, we seriously question whether Hook 'N Horn can be held jointly and severally liable as Jo Anna's alter ego.  The fact emphasized by both the government and the district court in its alter ego analysis—that Hook 'N Horn operated the same both before and after incorporation—seems not only innocuous but entirely irrelevant to the factors that bear on alter ego liability.

In Minnesota,[4] "[a] party may not have equitable relief where there is an adequate remedy at law available." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996). Unjust enrichment is an equitable remedy. Thus, "[r]elief under the theory of unjust enrichment is not available where there is an adequate legal remedy or where statutory standards for recovery are set by the legislature." *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). This principle has often been applied by the Federal District Court for the District of Minnesota. *See, e.g.*, *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1132 (D. Minn. 2011) (Kyle, J.) ("Minnesota courts repeatedly have held that the availability of statutory claims (whether state or federal) will preclude the assertion of an unjust-enrichment or other equitable claim seeking the same relief."); *Maranda v. Grp. Health Plan, Inc.*, No. 07-4655, 2008 WL 2139584, at *3 (D. Minn. May 20, 2008) (Doty, J.) (dismissing unjust enrichment claim because plaintiffs had adequate legal remedies in the form of state and federal FLSA claims); *Arena Dev. Grp., LLC v. Naegle Commc'ns, Inc.*, No.

---

[4]In its brief to this court, the government argued that we can affirm the grant of summary judgment on the grounds of federal common law, should we conclude that Minnesota law does not support the unjust enrichment award. This argument is without merit. The United States Supreme Court has explained that federal common law only applies in areas involving uniquely federal interests. *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988). These areas include "obligations to and rights of the United States under its contracts," "civil liability of federal officials for actions taken in the course of their duty," and "civil liabilities arising out of the performance of federal procurement contracts." *Id.* at 504-06. This case does not touch any of those areas. Furthermore, even if there were uniquely federal interests in this case, federal common law applies only when "there is a significant conflict between some federal policy or interest and the use of state law. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (internal quotation and citation omitted). For federal common law to apply, the government would need to identify "a specific, concrete federal policy or interest that is compromised by [state] law." *Id.* at 88. The government failed to identify any such conflict in this case. Therefore, federal common law does not apply and instead we apply Minnesota law.

06-2806, 2008 WL 1924179, at *5 (D. Minn. April 29, 2008) (Montgomery, J.) (dismissing an unjust enrichment claim because a Minnesota fraud statute provided an adequate remedy at law); *Levine v. N. Am. Mortg.*, No. 98-556, 2000 WL 34494823, at *5 (D. Minn. May 17, 2000) (Tunheim, J.) (concluding that the plaintiff could not maintain an unjust enrichment claim because he had an adequate remedy at law under the Real Estate Settlement Procedures Act); *Johnson v. Res. Bancshares Mortg. Grp.*, No. 972378, 2000 WL 34424097, at *2 (D. Minn. May 15, 2000) (Frank, J.) (concluding that the plaintiff's claim for unjust enrichment failed because they had an adequate remedy at law); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1070-71 (D. Minn. 1999) (Magnuson, J.) (concluding that unjust enrichment was unavailable to the plaintiffs because they had a subrogation remedy at law, even if they did not assert it).

In this case, it appears that adequate remedies at law were available to the government. The government pleaded claims under both the Minnesota Fraudulent Transfer Act and the Federal Debt Collection Procedure Act. Courts have often found that fraudulent transfer statutes are an adequate legal remedy which displace unjust enrichment claims. *See, e.g.*, *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1132 (D. Minn. 2012) (concluding that the Minnesota Fraudulent Transfer Act is an adequate remedy at law which precludes unjust enrichment recovery); *Arena Development*, 2008 WL 1924179 at *5 (same). The government offered no indication in its brief to this court that the fraudulent transfer statutes are not an adequate remedy at law. And, the government sought the exact same damages under both the statutory and equitable claims—the government did not seek any relief in equity which it could not obtain under the statutory claims. Furthermore, the fraudulent transfer statutes are an adequate remedy at law even if recovery under these statutes is time-barred. *See Laitinen v. Per Mar Sec. & Research Corp.*, No. 11-3120, 2012 WL 695897, at *4 (D. Minn. March 5, 2012) ("Although this relief may be time barred by the applicable statute of limitations, such a fact does not affect an unjust enrichment analysis."); *Johnson*, 2000 WL 34424097 at *2 (concluding that an adequate statutory remedy

precluded unjust enrichment recovery, even though the statute of limitations had run on the statutory claim).

Although a body of case law says unjust enrichment recovery may not be had where a party has an adequate legal remedy, the government argues it can get around this restraint by pleading and pursuing unjust enrichment and the adequate legal remedy simultaneously. The government argues that a party is only precluded from recovering under a theory of unjust enrichment if it failed to pursue the existing adequate remedy at law. Thus, the government argues that because it pleaded and pursued both equitable and legal claims, it was entitled to recover under unjust enrichment.

It is true that some district courts are unwilling to dismiss an unjust enrichment claim at the pleading stage despite the existence of an adequate legal remedy, because the federal rules allow for the pleading of claims in the alternative. *See, e.g.*, *United States v. R.J. Zavoral & Sons Inc.*, 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012) (declining to dismiss an unjust enrichment claim at the time because "at a minimum, the Government may maintain [unjust enrichment] as alternative claim for relief" under the federal rules); *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009) (declining to dismiss an unjust enrichment claim, noting that "at this stage in the litigation, plaintiff is permitted to pursue alternative theories that would provide remedies at law and equity"). But the issue here is not one of pleading. The government also accurately notes that some cases have emphasized a plaintiff's failure to pursue the adequate legal remedy when dismissing unjust enrichment claims. *See, e.g.*, *Cummins Law Office*, 826 F. Supp. 2d at 1132 ("Moreover, here it is not simply the *existence* of a statutory remedy that bars Cummins's equitable claims, but also its *failure to avail itself of that remedy*.") But despite courts' occasional emphasis of the failure to pursue a legal remedy, it is the existence of an adequate legal remedy that precludes unjust enrichment recovery. District courts routinely dismiss unjust enrichment claims where the plaintiff pleaded

and pursued both equitable and legal claims simultaneously, as well as where the plaintiff failed to pursue adequate legal remedies. *See, e.g.*, *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 968-69 (D. Minn. 2009) (explaining that the plaintiffs' unjust enrichment claim failed due to the existence of an adequate legal remedy where the plaintiffs also pleaded tort claims). It should make no difference that the government pleaded and pursued its statutory claims in this case. It would be anomalous to allow unjust enrichment recovery, despite law to the contrary, merely because the plaintiff fashioned the pleadings a certain way. But all matters relating to the unjust enrichment claim are for the district court's further consideration on remand.

We reverse and remand for further proceedings consistent with this opinion.

_____