# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1075

_____

CMI Roadbuilding, Inc.; CMI Roadbuilding, Ltd.

*Plaintiffs - Appellants*

v.

Iowa Parts, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: November 14, 2018
Filed: April 4, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

BEAM, Circuit Judge.

CMI Roadbuilding appeals the district court's[1] adverse grant of summary judgment in favor of Iowa Parts in this trademark secrets and intellectual property case. We affirm the district court.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I.   BACKGROUND

CMI Roadbuilding owns assets related to the manufacturing of asphalt and concrete plants, as well as landfill and dirt compaction equipment.   CMI Roadbuilding purchased these from a host of other companies, and after a series of mergers and acquisitions, the end result is that CMI Roadbuilding now[2] holds assets, including intellectual property, from companies formerly called Terex Corporation; Cedarapids, Inc.; and Standard Havens; as well as the CMI Corporation's own line of asphalt plants (collectively CMI Roadbuilding).  As noted, CMI Roadbuilding is in the business of manufacturing and selling asphalt plants, related equipment, and for a time, also sold replacement parts.  Sometime around 1999, Terex significantly downsized its operation–from 1200 employees to 200–and stopped selling replacement and after-market parts for its products, and instead sought vendors to do so for them.   CMI Roadbuilding sent the technical drawings, plans and specifications–"engineering documents" that are required to make an asphalt plant and its component parts–to the vendors who were in the business of making these replacement and after-market parts.

In 2002, Iowa Parts got into the market of becoming a vendor of replacement parts that were previously designed and manufactured by Terex, Cedarapids, Standard Havens, and CMI.  Iowa Parts was formed by the former head of Standard Havens' Parts Department, Michael Hawkins.  Iowa Parts represents that its parts meet "original equipment manufacturer" (OEM) specifications. Several employees at Iowa Parts used to work at the various companies that merged into CMI Roadbuilding. Included in this group was Jay King, former parts manager at Terex; Rick Merritt, a draftsman for Cedarapids and Terex; and Timothy Franck, who worked in some

---

[2]The disparate timing of these various mergers and acquisitions makes reference to the various companies and parties somewhat confusing.  For instance, while Terex acquired Cedarapids in 1999, CMI Roadbuilding did not acquire Terex until 2013, after many of the key events at issue in this dispute took place.

capacity for Cedarapids and Terex. In order to build the parts, Iowa Parts approached other vendors who had been given engineering documents from CMI Roadbuilding and its predecessors, and asked if those vendors would manufacture parts for Iowa Parts. Some of the vendors additionally provided drawings to Iowa Parts that they had obtained from CMI Roadbuilding. Iowa Parts also "reverse engineered" other component parts by using a string line and a tape measure.

On May 29, 2002, Terex sent a letter to King, reminding him of his duty of loyalty to his former company and that it would be "a crime" for him to disclose any of CMI Terex's trade secrets without authorization. The letter also stated that it knew Iowa Parts had been contacting and recruiting Cedarapids customers. Undeterred, Iowa Parts continued manufacturing component parts. As evidence of CMI Roadbuilding's knowledge of this, during deposition testimony, the parts manager for CMI Roadbuilding testified that Iowa Parts directly competed with CMI Roadbuilding from Iowa Parts' inception in 2002. The manager noted that during this time frame she was perplexed as to how Iowa Parts could quickly and easily provide customers with quotes for parts, while she at CMI Roadbuilding struggled to provide price information about component parts for its own products. Evidence in the summary judgment record also indicates that Iowa Parts advertised regularly in trade magazines between 2002 and 2014, and that Terex advertised in the same magazine. Iowa Parts also attended and advertised at prominent asphalt trade shows. Representatives of Terex attended at least one of these same trade shows. Further, Iowa Parts' current website, www.iowapartsusa.com, which began operating in July 2011, advertises its business model, the parts it manufactures for asphalt plants, and notes that its employees gained knowledge in the business while working for CMI Roadbuilding's predecessors.

More recently, and what amounts to the real genesis of the current dispute, Iowa Parts transitioned from making smaller and cheaper ($50 to $250) parts to larger component parts, which cost more in the range of $300,000 to $400,000. Once CMI

Roadbuilding found out about this turn of events, CMI Roadbuilding instituted the present action on February 22, 2016, alleging: (1) Iowa Parts violated the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836, by converting CMI Roadbuilding's trade secrets; (2) that Iowa Parts violated the similar Iowa trade secrets law, Iowa Uniform Trade Secrets Act (UTSA), Iowa Code § 550; (3) a common law claim that Iowa Parts converted its trade secrets; and (4) that Iowa Parts was unjustly enriched by taking CMI Roadbuilding's trade secrets.

Ultimately, CMI Roadbuilding moved for summary judgment, and Iowa Parts filed a competing motion for summary judgment, alleging that the three-year statute of limitations on the statutory claims had run because CMI Roadbuilding knew much earlier than February 2013 what Iowa Parts was doing, and that CMI Roadbuilding did not keep the trade secrets "secret" because they distributed them to several vendors. The district court agreed with Iowa Parts on the statute of limitations argument, rejecting CMI Roadbuilding's theory that the "discovery" doctrine should toll the statute because CMI Roadbuilding knew, or should have known, well before February 2013 that its trade secrets were being used by Iowa Parts.

With regard to the conversion claim, the court found that even if a longer five-year statute of limitations did not bar the conversion action, conversion is the "civil equivalent" to theft. The court determined that while conversion could be available in a trade secrets claim if the offending party actually interfered with the original owner's use of the secrets, in this case, Iowa Parts' use of the engineering documents has not actually deprived CMI Roadbuilding of any of its trade secrets. The court noted that CMI Roadbuilding has never lost the ability to control and utilize the documents it maintains, and it still retains all of the engineering documents. Finally, with regard to unjust enrichment, the court found that CMI Roadbuilding would have had an adequate remedy at law if it had timely brought suit, and thus, the equitable doctrine of unjust enrichment was unavailable. CMI Roadbuilding appeals.

-4-

## II.   DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). Our review is de novo. Id.

### A.   Statutory Causes of Action

The DTSA creates a private right of action for an owner of a trade secret when that secret has been misappropriated, if the secret relates to a product used in interstate commerce. 18 U.S.C. § 1836. Trade secrets include, as relevant here, "scientific, technical . . . engineering information, including patterns, plans, . . . designs." Id. § 1839(3). However such information only qualifies as a trade secret if the owner has "taken reasonable measures to keep such information secret" and the information has economic value. Id. § 1839(3). "Misappropriation" essentially means to acquire the trade secret of another by improper means and without the owner's consent. Id. § 1839(5)-(6). The UTSA is similar and both statutes have a three-year statute of limitations for bringing a claim for trade secret misappropriation. See 18 U.S.C. § 1836(d); Iowa Code § 550.8. CMI Roadbuilding brought the instant action on February 22, 2016. Iowa Parts began doing business in or around 2002, with CMI Roadbuilding's abundant knowledge. In order to succeed in litigation under both statutes, CMI Roadbuilding must not have had actual or imputed knowledge of a violation prior to February 22, 2013, for the claims to survive summary judgment. CMI Roadbuilding argues that it did not "discover" Iowa Parts was actually using trade secrets until the more expensive parts were being produced in 2016, and that the discovery rule tolls application of the statute of limitations.

The discovery rule tolls the statute of limitations until such time as the injured person knows or in the exercise of reasonable care should know, the fact and cause of the injury. Woodroffe v. Hasenclever, 540 N.W.2d 45, 47 (Iowa 1995). The rule extends when the plaintiff "first becomes aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause." Estate of Montag v. T H Agric. & Nutrition Co., 509 N.W.2d 469, 470 (Iowa 1993). The ultimate focus is whether the plaintiff was aware a problem existed. Franzen v. Deere & Co., 377 N.W.2d 660, 662 (Iowa 1985). Once a plaintiff is on inquiry notice, he is charged with knowledge that a reasonably diligent investigation would have disclosed, and has a duty to do such an investigation, regardless of the plaintiff's exact knowledge. Woodroffe, 540 N.W.2d at 48-49. The plaintiff need only know a problem exists. Id. While this can be an issue for the factfinder, it is not always so. See, e.g., Shams v. Hassan, 905 N.W.2d 158, 163 (Iowa 2017) (holding that this inquiry can be one for the factfinder "unless the issue is so clear it can be resolved as a matter of law"). While Iowa Parts has the burden of proving the statute of limitations bars the action, CMI Roadbuilding has the burden of proving the discovery rule tolls application of the statutory bar. John Q. Hammons Hotels, Inc. v. Acorn Window Sys., Inc., 394 F.3d 607, 610 (8th Cir. 2005).

Here CMI Roadbuilding cannot establish its burden of proving that the discovery rule saves its statutory causes of action. In 2002, Terex sent King a letter indicating a possible problem existed with Iowa Parts and its engineering documents and warned that it was illegal for it to use them without authorization. Iowa Parts took no evasive action to conceal its activities; it continued to sell its parts to CMI Roadbuilding's customers, advertise in common industry trade journals, and promoted itself with exhibits at an asphalt trade show which representatives from CMI Roadbuilding's predecessor companies attended. CMI Roadbuilding was likely at the earliest on inquiry notice at the time its predecessor Terex sent the letter to King in 2002, but also was continuously on notice beyond that time due to Iowa Parts' advertising, exhibiting, and sales activities.

CMI Roadbuilding argues that it could not have discovered that its trade secrets were being misappropriated, triggering the running of the statute, until the evolution of Iowa Parts' business into the business of providing large components. It argues that it reasonably did not know whether Iowa Parts was misappropriating its trade secrets when it was making smaller parts since those parts can be reverse engineered and possibly built without engineering documents. This argument ignores the application of the inquiry notice portion of the discovery rule. As stated above, the ultimate focus is whether the plaintiff was aware a problem existed. Franzen, 377 N.W.2d at 662. CMI Roadbuilding was on inquiry notice that a problem with possible misappropriation of its trade secrets might exist well before February 2013. At the point it was on notice there was a possible problem, it had a duty to investigate, regardless of its exact knowledge. Woodroffe, 540 N.W.2d at 48-49. As the district court noted, Iowa Parts established itself as a direct competitor of CMI Roadbuilding almost as soon as it began operating, as noted by CMI Roadbuilding's parts manager. It advertised in magazines, it promoted itself at industry trade shows, and it maintained a website explaining the company's and employees' background and relation to CMI Roadbuilding and its predecessors. Accordingly, we affirm the district court's disposition of this issue.

## B. Conversion

CMI Roadbuilding next claims the district court erred in granting summary judgment on its conversion claim. The Iowa statute of limitations for this state law claim is likely five years, per Iowa Code § 614.1(4) (five-year limitation for injuries to property); Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 477 n.2 (Iowa 1990) (assuming without deciding that this five-year statute of limitations applied to a conversion claim rather than a general two-year tort statute of limitations based upon the parties' agreement on the issue). Thus, CMI Roadbuilding must not have been on inquiry notice before February 2011. Assuming that Iowa law would even recognize a claim for conversion of intellectual property, e.g., Kendall/Hunt

Publ'g Co. v. Rowe, 424 N.W.2d 235, 247 (Iowa 1988) (affirming the ruling that conversion did not extend to protect intellectual property in the form of the design and layout of a book), as is the case with the statutory claims, it is clear that CMI Roadbuilding was on notice of a possible problem with its trade secrets as early as 2002, shortly after Iowa Parts formed as a company. Accordingly, the district court correctly granted summary judgment on the conversion claim.

## C.    Unjust Enrichment

CMI Roadbuilding's final claim is that Iowa Parts will be unjustly enriched if CMI Roadbuilding is not allowed to pursue its intellectual property rights claim at this juncture. The district court held that even if the unjust enrichment claim was not time-barred, which it likely was, see Iowa Code § 614.1(4), Iowa Parts was entitled to summary judgment because an equitable claim fails when there is an adequate remedy at law. Where a party seeks damages pursuant to both a statutory and an equitable claim, the very existence of the statutory claims bars recovery on the equitable claim, "even if recovery under the[] statutes is time-barred." United States v. Bame, 721 F.3d 1025, 1031 (8th Cir. 2013). In Bame, we found that, under Minnesota law, a time-barred cause of action arising under a fraudulent transfer statute precluded the plaintiff from asserting an unjust enrichment claim. Id. We found that it was the existence of, *not the efficacy of*, an adequate legal remedy that precluded the equitable claim. Id. CMI Roadbuilding's citation to cases from the federal district courts of Iowa for the contrary conclusion are inapposite. Case law from the Iowa state courts indicates that the law in Iowa is the same as, not more broadly construed, than Minnesota law in Bame. Indeed, Iowa law recognizes that "[e]quity generally will not provide relief where an adequate remedy at law existed and defendant was denied that relief for appropriate legal reasons." Mosebach v. Blythe, 282 N.W.2d 755, 761 (Iowa Ct. App. 1979). See also State ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 154 n.2 (Iowa 2001) ("The adequacy of a legal remedy is a general limitation on the exercise of equity jurisdiction . . . ."). While

alternative theories can be pled, a plaintiff cannot recover from both. <u>Mosebach</u>, 282 N.W.2d at 758, 761 (noting that plaintiffs had pleaded equitable issues in the alternative to their contract claims, which ultimately failed). CMI Roadbuilding could have had viable claims under the statutory schemes if it had timely brought the claims. Accordingly, an equitable claim cannot provide alternative relief, and the district court properly granted summary judgment.

## III.    CONCLUSION

CMI Roadbuilding was on inquiry notice that Iowa Parts was making its component parts, possibly with its engineering documents and other trade secrets, starting in 2002 and continuing thereafter. As Iowa Parts notes in its brief, "the only thing that has changed since 2002 is that Iowa Parts now sells directly competing parts that are significantly more expensive than they had in the past." Because the statute of limitations has run on the statutory claims and conversion claim, and the remaining equitable claim fails on the merits, we affirm the district court.

_____