# In the Iowa Supreme Court

No. 23–1794

Submitted November 12, 2025—Filed January 9, 2026

**Linda Betz,**

Appellant,

vs.

**Rebecca Mathisen, Eric Muller, Kelly Rasmuson,** and **Michael Wilson,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Patrick D. Smith, judge.

The defendants in a defamation action seek further review of a court of appeals decision reversing the district court's order granting the defendants' motion to dismiss based on the statute of limitations. **Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. Waterman, J., took no part in the consideration or decision of the case.

Michael J. Carroll (argued) of Carney & Appleby Law Firm, Des Moines, for appellant.

Dana Hempy (argued), David Bower, Katie Graham, and Haley Hermanson (until withdrawal), of Nyemaster Goode, P.C., Des Moines, for appellees.

**Mansfield, Justice.**

### I. Introduction.

An information security executive who lost her job believed that she had been discriminated against on the basis of sex, unjustly fired, and defamed. She brought one lawsuit. Then, after that lawsuit proved unsuccessful, she brought another lawsuit, naming as before the CEO of the company, but this time a different set of coworkers. Her second lawsuit asserted only defamation claims. By the time she filed the second lawsuit, over three years had elapsed since her employment had been terminated and any of the defamatory statements had been published.

The defendants sought dismissal of the second lawsuit on various grounds, including the statute of limitations, claim preclusion, absolute privilege, and qualified privilege. The district court granted dismissal based on the statute of limitations. The court of appeals reversed, reasoning that the discovery rule applies to defamation claims in Iowa and that "application of the discovery rule is a factual inquiry that cannot be resolved at [the] motion-to-dismiss stage of the proceedings."

We agree that application of the discovery rule is sometimes fact-intensive and not amenable to resolution on a motion to dismiss. But here, the allegations of the first lawsuit make it clear that the plaintiff was on inquiry notice of job-related defamation claims. Yet the plaintiff waited over two years from that filing to file her second lawsuit. By then, it was too late. Accordingly, we affirm the statute-of-limitations dismissal order of the district court and vacate the decision of the court of appeals. We do so without reaching any of the other legal issues in this case, including whether a discovery rule applies to defamation claims and whether the plaintiff's case might be barred by claim preclusion or privilege.

**II. Facts and Procedural History.**

**A. Linda Betz's Employment with Federal Home Loan Bank of Des Moines.** Because this case was decided on a motion to dismiss, we accept Linda Betz's well-pleaded factual allegations as true. *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020). In addition, the defendants asked the district court to take judicial notice of certain filings from Betz's prior federal lawsuit. Betz objected to the district court's taking judicial notice of any facts asserted within those filings but did not oppose the court taking "judicial notice of the fact that various pleadings exist and that they read as they read on their face." On that basis, we set forth the essential facts of this case.[1]

Betz was hired by the Federal Home Loan Bank of Des Moines (FHLB) on March 19, 2018, as its chief information security officer. She was recruited to correct deficiencies in FHLB's information-security program. Three employees reported directly to her, including Rebecca Mathisen, manager of information security.

During Betz's tenure, FHLB retained independent contractor Paul Crosthwaite. On July 21, 2019, Mathisen and Crosthwaite informed Betz that certain "SOX controls" were not being performed.[2] This was a serious issue.

---

[1]In *Meade v. Christie*, we recently reaffirmed that "when ruling on a motion to dismiss, courts generally cabin their factual analysis to the claims set forth in the plaintiff's petition and the matters on which the court can take judicial notice." 974 N.W.2d 770, 776 (Iowa 2022). We held that publicly filed articles of incorporation could be considered part of the record on the motion to dismiss, although the articles were not mentioned in the petition, where the defendants had asked the district court to take judicial notice, the district court had taken judicial notice, and the plaintiff didn't challenge that determination on appeal. *Id.*

Likewise, here we can take judicial notice of filings in the federal litigation to the extent (1) copies were submitted to the district court and (2) they are being considered solely for notice purposes and not to establish the truth of facts asserted.

[2]"SOX controls" is shorthand for internal controls required by the Sarbanes-Oxley Act of 2002 to ensure accuracy and integrity in financial reporting. *See* 15 U.S.C. §§ 7201–66.

On August 7, Mathisen filed an internal complaint against Betz. Mathisen's complaint stated that she had certified the relevant SOX controls as "not effective" but that Betz had improperly certified them as effective. At that time, Mathisen had not seen Betz's certifications. Mathisen also stated that Betz was going to terminate her. Betz, however, had no plans to terminate Mathisen's employment.

Based on Mathisen's complaint, an internal audit was commenced. The auditors—Kelly Rasmuson and Eric Muller—did largely a paper review. They interviewed Mathisen and Crosthwaite but not Betz. They created an interim audit report on September 4 and a final report on October 19. Their audit report found no evidence that Betz's certification conflicted with Mathisen's. Yet the report described Betz as having a "steep learning curve" and identified other concerns with Betz, such as "a lack of listening to others . . . and a lack of depth with awareness/knowledge of controls." The audit report noted that Michael Wilson had decided to terminate Betz's employment because of actions described in Mathisen's complaint and also because of ineffective performance on information security projects.

Wilson did not terminate Betz immediately. Meanwhile, he brought in an independent contractor, Zeeshan Kazmi, to act as interim chief information officer. Kazmi became Betz's supervisor. Betz believed that Kazmi was sexist and someone who treated female employees different from male employees. Betz complained to human relations about Kazmi to no avail. Kazmi frequently would not meet with Betz but would meet with his other direct report who was male.

Kazmi worked closely with Sunil Mohandas, FHLB's chief risk officer. Betz believed that Mohandas also disapproved of female employees. It was apparent

to Betz that Kazmi, Mohandas, and Wilson worked closely together. Mohandas, like Kazmi, would ignore Betz's advice, position, and experience.

On December 4, Betz met with Kazmi and Mohandas. They shared with her a presentation they had created to show the board that the information security risk of FHLB had changed. Betz did not agree with them and she was not invited to their follow-up meeting with the board later that month.

On January 3, 2020, Wilson fired Betz, stating that FHLB had "decided to go in a different direction" with information security. Betz asked what the different direction was and Wilson replied, "[M]ore risk-based." Wilson had been scheduled to retire from FHLB and did so within a month of firing Betz.

FHLB filed a "Form 8-K" with the U.S. Securities and Exchange Commission (SEC) disclosing Betz's termination but omitting any statement that the termination was "without cause." Her position was later eliminated.

While employed by FHLB, Betz was not informed of Mathisen's complaints, nor did she have any knowledge of the internal audit performed by Rasmuson and Muller.

**B. Betz's First Lawsuit.** On March 30, 2020, Betz filed a complaint with the Iowa Civil Rights Commission alleging that she had been terminated because of her sex. On November 11, Betz filed a civil action in the Polk County District Court against FHLB, Wilson, Kazmi, and Mohandas. This initial lawsuit, which was removed to the United States District Court for the Southern District of Iowa, contained ten counts: sex discrimination, harassment, and retaliation in violation of Title VII and the Iowa Civil Rights Act (counts I–IV); defamation, false light, and blacklisting (counts V–VII); intentional interference with employment rights and wrongful termination (counts VIII and X); and civil conspiracy (count IX).

Betz's defamation claim centered on the Form 8-K that FHLB filed with the SEC and its failure to mention that her termination was "without cause." However, she also alleged that the defendants had "made additional slanderous and libelous statements regarding Plaintiff's ability to perform her job or surrounding the circumstances of her termination, which include, but are not limited to statements made to the Bank's regulator, the Federal Housing Finance Agency."

On February 3, 2021, the defendants in the federal litigation moved to dismiss most of Betz's claims. Discovery also proceeded. On July 19, the federal district court granted in part and denied in part the motion to dismiss. *Betz v. Fed. Home Loan Bank of Des Moines*, 549 F. Supp. 3d 951, 968–69 (S.D. Iowa 2021). The federal district court dismissed Betz's claims for wrongful discharge and interference with employment rights as preempted and her claims for defamation, false light, blacklisting, and civil conspiracy for failure to state a claim. *Id.* As to defamation, the court determined that "the objectively reasonable reader, reading [the statement about Betz's termination in the Form 8-K] and nothing else, would not draw the implication that Plaintiff's employment termination was for cause." *Id.* at 966.

Regarding the "additional slanderous and libelous statements" alleged by Betz, the court added that the "Plaintiff does not identify any additional statements, written or oral, that were allegedly made by any Defendant. Her claim for defamation as to these unidentified statements is dismissed because she fails to plead any facts to state a claim upon which relief can be granted." *Id.* at 961 n.6.

In light of the federal district court's ruling, Betz still had claims under Title VII and the Iowa Civil Rights Act. *See id.* at 957–58. But when Betz moved

for summary judgment on those claims, Betz consented to the dismissal of her sex discrimination and harassment claims, resisting summary judgment solely as to her retaliation claims. On December 6, 2022, the federal district court granted summary judgment to the defendants on those remaining claims. *Betz v. Fed. Home Loan Bank of Des Moines*, 644 F. Supp. 3d 500, 513 (S.D. Iowa 2022). That court found that FHLB had offered legitimate, nonretaliatory reasons for Betz's termination. *Id.* at 510–13. Those reasons had nothing to do with Betz's complaints about Kazmi but instead related to the audit and Mathisen's complaints. *Id.* Betz did not appeal.

**C. The Present Lawsuit.** Approximately three months later, on March 6, 2023, Betz filed this action in the Polk County District Court against Mathisen, Muller, Rasmuson, and Wilson, alleging a single count of defamation based on Mathisen's 2019 whistleblower complaints, the internal audit reports by Rasmuson and Muller, and Wilson's statements to FHLB personnel and regulators.

The defendants moved to dismiss or alternatively for summary judgment. Their motion argued that the claim was barred by the two-year statute of limitations contained in Iowa Code section 614.1(2) (2023), by claim preclusion arising from the federal judgment, or by absolute or qualified privilege. The district court granted dismissal based on the statute of limitations.

First, the district court concluded that under Iowa law, the limitations period for defamation begins to run on the date of publication. Because all the allegedly defamatory statements were published more than two years before Betz initiated this case in March 2023, they were time-barred.

Alternatively, the district court found that even if a discovery rule applied, Betz was on inquiry notice of the defendants' defamation by November 11, 2020,

the date when she filed her first lawsuit. The district court further noted that Betz apparently received *actual* notice of the defamatory statements within several months of filing her first lawsuit, in the first part of 2021. Yet, again, she did not bring this action until March 10, 2023.

Betz appealed. We transferred the case to the court of appeals. The court of appeals reversed and remanded the district court's order of dismissal by a 6–3 en banc vote. The majority concluded that a discovery rule applies to defamation claims where the allegedly defamatory statements are "inherently secretive, inherently undiscoverable, or not a matter of public knowledge." The majority further found unresolved factual questions as to when Betz was on notice for discovery rule purposes. The dissent, however, would have affirmed the district court. The dissent reasoned that "whether the discovery rule applies to a defamation action does not matter, as Betz was on inquiry notice based upon her earlier allegations in the first suit involving her employment at the bank."

We granted the defendants' application for further review.

**III. Standard of Review.**

"We review the granting of a motion to dismiss for errors at law." *Askvig v. Snap-On Logistics Co.*, 967 N.W.2d 558, 560 (Iowa 2021) (quoting *Jacobs v. Iowa Dep't of Transp.*, 887 N.W.2d 590, 593 (Iowa 2016)). "When we review motions to dismiss, 'we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions.'" *MIMG CLXXII Retreat on 6th, LLC v. Miller*, 16 N.W.3d 489, 493 (Iowa 2025) (quoting *Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 295 (Iowa 2022)). "A defendant may raise the statute of limitations by a motion to dismiss if it is obvious from the uncontroverted facts contained in the petition that the applicable statute of limitations bars the plaintiff's claim for relief."

*Benskin*, 952 N.W.2d at 299 (quoting *Venckus v. City of Iowa City*, 930 N.W.2d 792, 809 (Iowa 2019)).

**IV. Analysis.**

The statute of limitations for defamation claims is two years. Iowa Code section 614.1(2) provides,

> Actions may be brought within the times limited as follows, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:
>
> . . . .
>
> 2. *Injuries to person or reputation* . . . . Those founded on injuries to the person or reputation, . . . within two years.

The parties dispute whether this two-year period is subject to a discovery rule or whether it runs from the date of publication without exception. *See Linn v. Montgomery*, 903 N.W.2d 337, 343 (Iowa 2017) (stating in dicta that "[w]e have not decided whether the discovery rule applies to this statute for nonnegligence claims such as defamation"). We conclude that we need not address this issue. Like the district court and the court of appeals dissent, we conclude that Betz's defamation claims against the defendants are barred even under a discovery rule.

A preliminary question arises as to whether we can consider filings from the first lawsuit. As we have already discussed, the defendants timely asked the district court to take judicial notice of those filings. Betz resisted to the extent the court was being asked to accept *factual assertions or factual findings*. But we conclude (as did the district court) that it is proper to rely on those filings to the extent they establish *what notice Betz had* at certain timeframes in the federal litigation. Betz herself quoted from her federal lawsuit in resisting the motion to dismiss. *See State v. Gale*, 21 N.W.3d 151, 156 (Iowa 2025) (holding that judicial

notice of the records in another case is proper if the parties agree to it); *Meade v. Christie*, 974 N.W.2d 770, 775 (Iowa 2022) ("In ruling on a motion to dismiss, the court considers only 'the contents of the petition and matters of which the court can take judicial notice.' " (quoting *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 194 (Iowa 2007))); *see also Gray v. Kinseth Corp.*, 636 N.W.2d 100, 102 (Iowa 2001) (concluding that a motion to dismiss was properly granted based on the statute of limitations where the plaintiff "conceded all of the facts necessary to resolve the narrow legal issue of whether his suit is time-barred").[3]

Betz filed her present lawsuit in early March 2023. She alleges that she did not become aware of the defendants' allegedly defamatory statements "until, at the earliest, late March 2021." For motion to dismiss purposes, this would make her present lawsuit timely under a discovery rule—but just barely—if *actual notice* were necessary to start the clock running. But actual notice isn't needed. According to our precedent, the statute of limitations begins to run under a discovery rule "when the plaintiff knows or should have known facts that put the plaintiff on inquiry notice that a claim may be present." *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 566 (Iowa 2018). "[U]nder the discovery rule, the limitations period begins when a claimant has knowledge sufficient to put that person on inquiry notice." *Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 243 (Iowa 1988). Inquiry notice is triggered when "a claimant . . . gains information sufficient to alert a reasonable person of the need to investigate."

---

[3]We do not consider for any purpose federal court filings that were not actually submitted to the district court before it ruled on the motion to dismiss. Two days before we heard oral argument in this appeal, the defendants provided a copy of an affidavit that Betz had filed in the federal litigation on February 26, 2021. Because that affidavit was not part of the record below, we will not consider it. *See Peterzalek v. Iowa Dist. Ct.*, 7 N.W.3d 37, 41 (Iowa 2024) (declining to take judicial notice on appeal and noting that our review is limited to the record below). This may be stating the obvious, but it isn't free for our judges to access the federal PACER system. Anyone who wants an Iowa judge to take judicial notice of a federal filing should submit a copy through our own filing system.

*Ranney v. Parawax Co.*, 582 N.W.2d 152, 155 (Iowa 1998) (en banc). At that point, the plaintiff "is charged with knowing . . . what a reasonable investigation would have disclosed," whether or not the plaintiff actually undertook such an investigation. *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985). "The period of limitations is the outer time limit for making the investigation and bringing the action." *Id.* "A claimant can be on inquiry notice without knowing 'the details of the evidence by which to prove the cause of action.' " *Hallett Constr. Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006) (quoting *Vachon v. State*, 514 N.W.2d 442, 446 (Iowa 1994)).

We have repeatedly held that the discovery rule cannot save a plaintiff who may have lacked actual notice but who failed to act diligently in investigating the facts they had. Thus, in *Mormann v. Iowa Workforce Development*, we held that a motion to dismiss was properly granted in an employment discrimination case despite the discovery rule. 913 N.W.2d at 576–77. The plaintiff admittedly knew "he was a member of the protected class, he was qualified for the job, he suffered an adverse employment action, and a younger worker was hired." *Id.* at 576. Those facts were enough to kick-start the limitations period even though the defendant allegedly concealed the real reasons why the plaintiff had not been hired. *Id.* at 561.

In *Franzen v. Deere & Co.*, we outlined some principles that govern the discovery rule and inquiry notice. 377 N.W.2d at 662. There, the plaintiffs brought a products liability action two years and eight months after a farm accident involving a forage wagon. *Id.* We affirmed summary judgment for the defendant, reasoning that as of the date of the accident, the plaintiffs had information that was "plainly sufficient to put them on inquiry notice concerning possible defects in the wagon." *Id.* at 663. The plaintiffs failed to investigate at

the time of the accident; "[w]hen they later investigated, they found the alleged defects they now rely on." *Id.* We held that the statute of limitations period began on the day of the injury, not on the later date when they discovered the alleged defects. *Id.* at 664. Regarding when inquiry notice is triggered, we explained that "the duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury"; instead, "[i]t is sufficient that the person be aware that a problem existed." *Id.* at 662. "One purpose of inquiry is to ascertain its exact nature." *Id.*

*Vachon v. State*—another discovery rule case—bears some resemblance to the present case because it involved successive lawsuits. 514 N.W.2d 442. There, the injured party sustained a catastrophic leg injury in October 1987 when he was struck by a car, transported to one hospital, transferred to another hospital, diagnosed with compartment syndrome, and ultimately underwent amputation of his leg below the knee. *Id.* at 444. On May 25, 1988, the plaintiffs retained legal counsel, and by March 27, 1989, their counsel had obtained medical records. *Id.* In August 1989, the plaintiffs filed their first lawsuit. *Id.* On May 7, 1990, while the first lawsuit was pending, the plaintiffs' counsel received a letter from a doctor directing his attention to the potential negligence of the emergency room physician who had treated the injury. *Id.* The plaintiffs filed a second lawsuit on July 8, 1991. *Id.*

On appeal, this court concluded as a matter of law that the plaintiffs had inquiry notice of their cause of action more than two years before filing the second suit. *Id.* at 448. By the time the plaintiffs had retained counsel and received the relevant medical records, "plaintiffs knew all of the facts needed to investigate and determine the existence of a cause of action." *Id.* Therefore, we

held that "[e]ven when the discovery rule is applied, . . . the two-year statute has run." *Id.*

*Sparks v. Metalcraft, Inc.* also involved successive lawsuits. 408 N.W.2d 347 (Iowa 1987). In 1980, a doctor evaluated the injured party and informed him that his medical issues appeared to be related to his work with certain solvents. *Id.* at 348. The following year, he and his wife filed a lawsuit against his employer and several co-employees. *Id.* In 1983, the plaintiffs obtained in discovery a document in the employer's possession prepared by the solvent manufacturer and describing the solvents as nontoxic. *Id.* at 348–49. In 1984, the injured party underwent additional testing and examination by a specialist who opined that he suffered from "chemically acquired immune disregulation" that "he will probably never completely recover from." *Id.* at 349. The plaintiffs subsequently filed a second suit against the solvent manufacturer in January 1985, alleging, among other claims, negligence or gross negligence and fraud and deceit based on the document. *Id.* The district court granted summary judgment based on the statute of limitations defense. *Id.* at 349–50.

As in *Vachon,* the plaintiffs argued for application of the discovery rule and that they could not have discovered their causes of action through diligent investigation. *Id.* at 350–51. But we held that, at least by the time of filing the first lawsuit, the plaintiffs were on inquiry notice of all their causes of action. *Id.* at 352. With respect to the fraud claim against the solvent manufacturer, the plaintiffs argued that their cause of action accrued when they uncovered the document through discovery in the first action. *Id.* Not persuaded by this contention, we elaborated as follows:

> The underlying purpose of the discovery rule is that a statute of limitations should not bar the remedies of claimants who have been excusably unaware of their rights to sue. *Franzen,* 377 N.W.2d at

> 662; *Flynn v. Lucas County Memorial Hosp.*, 203 N.W.2d 613, 616 (Iowa 1973). Such purpose would be thwarted if we allowed claimants to ignore the statute of limitations when it becomes obvious they have a basis for an actionable claim based on one or more theories of action, and then later permit them to sue when additional facts are uncovered supporting additional theories. We therefore hold that once claimants have knowledge of facts supporting an actionable claim they have no more than the applicable period of limitations to discover all the theories of action they may wish to pursue in support of that claim.

*Id.*; *see also Hallett Constr. Co.*, 713 N.W.2d at 231 (finding that the plaintiff-lessors were on inquiry notice when the lessee invoked a fraudulently added renewal provision, even though the plaintiffs attributed the addition to their misremembering the original lease); *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 119–20 (Iowa 2006) (determining that the plaintiff was on inquiry notice of the contents of a report that it would have uncovered through "a reasonably diligent investigation"); *Est. of Montag v. T H Agric. & Nutrition Co.*, 509 N.W.2d 469, 470–71 (Iowa 1993) (holding that plaintiff was on inquiry notice at least by the time he began to investigate a possible connection between a toxic chemical and his illness by asking his doctor about it).

By November 11, 2020, Betz was already aware that she had been wrongfully discharged from FHLB. She was aware that FHLB management had filed a Form 8-K implying (in her view) that she had been terminated for cause. Betz also believed that she had been defamed through "additional slanderous and libelous statements regarding Plaintiff's ability to perform her job or surrounding the circumstances of her termination." Betz knew that her subordinate Mathisen had informed her several months before termination that SOX controls were not being performed—a serious issue. Finally, Betz had been told by Wilson, when he fired Betz, that she was being let go because FHLB wanted to go in a "more risk-based" direction with information security.

In light of the foregoing, we have no doubt that as of November 11, Betz was on inquiry notice of defamation claims based on negative statements by FHLB employees relating to her job performance. Betz may not have known who said what, or that there had been an internal complaint and an internal audit, but she realized that people had been unjustly criticizing her work. It's true that Betz may have initially believed that her gender was responsible for her job loss, but her first lawsuit also contained other claims, demonstrating that Betz didn't believe that was the only explanation. Wilson had told her that she was being dismissed because, in effect, she didn't understand risk well enough.

This should have triggered an investigation by Betz. In fact, it did. By late March 2021, Betz acknowledged that she knew of the statements made by defendants Mathison, Rasmuson, Muller, and Wilson. Still, Betz waited almost another two years before filing suit over those statements.

We asked Betz's counsel at oral argument why Betz did not amend her first lawsuit to add these defamation claims or file them separately in state court while the federal litigation was still ongoing. Betz's counsel responded that they had "decided that the best thing to do was to ride the federal claim through, until it was concluded, one way or the other, and then decide whether to file in federal court or state court, at that point." But under a discovery rule, wait-and-see may not be an option. We recognize that Betz may have viewed her sex discrimination and her defamation theories for her job loss as inconsistent with each other. But "[a]ttorneys may plead in the alternative," *Chicoine v. Wellmark, Inc.*, 2 N.W.3d 276, 286 (Iowa 2024), and when necessary whittle down those claims to the ones that are most substantiated.

Betz's decision to hold off on one of her litigation theories for her loss of her job while she litigated another theory brings to mind the circumstances in

*Vachon* and *Sparks*. As in *Vachon*, Betz "knew all of the facts needed to investigate and determine the existence of a cause of action." 514 N.W.2d at 448. As in *Sparks*, Betz cannot "ignore the statute of limitations when it becomes obvious [she has] a basis for an actionable claim based on one or more theories of action, and then later . . . sue when additional facts are uncovered supporting additional theories." 408 N.W.2d at 352. Even if we were to apply the discovery rule, Betz knew enough to be on inquiry notice of these defamation claims more than two years before she filed her petition.

**V. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals and affirm the district court's order granting the defendants' motion to dismiss.

**Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

All justices concur except Waterman, J., who takes no part.